OPINION OF THE COURT
Elrich A. Eastman, J.
Before the court in this juvenile delinquency proceeding is a motion to dismiss the petition on the ground that respondent’s right to a speedy trial has been denied. In the alternative, respondent moves to dismiss pursuant to subdivision (b) of section 767 of the Family Court Act on the ground that there is no appropriate disposition available to the Family Court on this petition.
The facts are undisputed. On July 5, 1978, respondent was arrested as an assault suspect and held overnight by the police. On September 11, 1978 and again on November 3, 1978, respondent participated in lineups relative to the assault incident of July 5, 1978. On January 24, 1980 a petition was filed in the Family Court alleging respondent committed a designated felony act pursuant to section 712 of the Family Court Act. Prior to the filing of said petition, respondent pleaded guilty as an adult in an unrelated matter, and is presently serving a prison term at Coxsackie Correctional Facility.
A SPEEDY TRIAL
Speedy justice has been part of the Anglo-American common-law tradition since the Magna Carta. It became part of our earliest State Constitutions and was subsequently incorporated into the Sixth Amendment to the United States Constitution. (United States v Lovasco, 431 US 783, 800 [Stevens, J., dissenting].)
The New York Court of Appeals has held that the CPL *1026 does not govern Family Court procedure. (Matter of D. [Daniel], 27 NY2d 90.) Hence, the speedy trial provisions embodied in CPL 30.30 are not applicable in juvenile delinquency proceedings. Notwithstanding the fact that juveniles are not entitled to all of the procedures set forth in the CPL, "fundamental fairness” dictates that constitutional guarantees be applied to juvenile proceedings where no adverse impact is realized thereby. (Matter of Winship, 397 US 358; McKeiver v Pennsylvania, 403 US 528.) Thus, the constitutional right to a speedy trial deemed so important by our legal forebears applies equally to juveniles in delinquency proceedings. (Matter of Patrick G., 92 Misc 2d 126.) Accordingly, this respondent is entitled to full protection of his constitutional right to a speedy trial.
Both Federal and State courts have noted a distinction between "preindictment” and "postindictment” delay. Sixth Amendment strictures against delay become operative once the accusatory instrument is filed or arrest is made, while preindictment delay is largely governed by the due process clause. (People v Singer, 44 NY2d 241, 252.) In United States v Marion (404 US 307, 320), the Supreme Court held that "it is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engage the particular protections of the speedy trial provision of the Sixth Amendment.” However, once a suspect has been arrested[1] and thereby put on notice that a criminal proceeding is contemplated, the Court of Appeals has held that allowing such person to remain in "legal limbo” for an unreasonable length of time constitutes a denial of due process absent prosecutorial justification for the delay. (People v Staley, 41 NY2d 789, 793.)
Indeed, New York courts have liberally applied the speedy trial requirement under New York’s due process clause. In People v Singer (supra, p 253), the Court of Appeals observed: "In this State we have never drawn a fine distinction between due process and speedy trial standards. We have long held that 'unreasonable delay in prosecuting a defendant consti *1027 tutes a denial of due process of law’ * * * An untimely prosecution may be subject to dismissal even though, in the interim, the defendant was not formally accused, restrained or incarcerated for the offense * * * Thus the State due process requirement of a prompt prosecution is broader than the right to a speedy trial guaranteed by statute”.
In considering this juvenile’s right to a prompt trial, four factors are of primary importance: (1) the length of the delay, (2) the reason for the delay, (3) the degree of actual prejudice to the defendant, and (4) the seriousness of the offense. (See People v Taranovich, 37 NY2d 442; People v Staley, supra; People v Bryant, 65 AD2d 333.)
Furthermore, because New York’s rule is broader than the Federally recognized right to due process, a lengthy and unjustified delay in instituting proceedings may require dismissal even though no actual prejudice to the defendant is shown. The reason for this is clear since both the accused and the public have a right to expect prompt prosecution of acts which, if committed by an adult, would constitute crimes. As stated in People v Staley (supra, p 792): "Prompt prosecution removes criminals from society’s midst and allows correctional authorities to start the rehabilitation process”.
The Legislature in passing the Juvenile Justice Reform Act of 1976 (L 1976, ch 878) directed towards serious crimes, to wit, designated felony acts, amended the purpose of section 711 of the Family Court Act to read: "the court shall consider the needs and best interests of the respondent as well as the need for protection of the community.”
Here was evidenced a concern for victims of violent crimes by juveniles and the need for community protection. Enmeshed in the Legislature’s thinking was an admixture of the punitive, corrective and rehabilitative approach to serious juvenile crimes. (See Matter of Quinton A., 68 AD2d 394.) Thus speedy trial of juveniles is of concern to the State and delay without proper cause may defeat the purpose of the legislation.
In People v Singer (44 NY2d 241, supra), the prosecutor waited 42 months following the defendant’s arrest for murder before commencing the prosecution. No excuse was offered by the prosecution other than that the defendant was in prison on an unrelated matter and there appeared to be no reason to prosecute before his release. The court held that (p 255): "the defendant’s incarceration is no excuse for putting off the *1028 prosecution, even though there is always the possibility that the delay may fortuitously yield additional evidence.” Since the record was not clear as to the cause of the delay, the matter was remanded for a hearing. The court reasoned that (p 255) "[although the People have the burden of establishing good cause for the delay their failure to do so on this record should not be conclusive.”
Here, no reason whatever is set forth to constitute good cause for the 18-month delay in bringing the instant petition and thereby depriving the respondent of his constitutional right to a speedy trial.[2] Thus, the matter must be set down for a hearing to determine whether the delay was justified. (People v Townsend, 38 AD2d 569.)
DISPOSITIONAL ALTERNATIVES
Respondent argues, in the alternative, that the petition should be dismissed due to the inappropriateness of the dispositional alternatives, pursuant to subdivision (b) of section 767 of the Family Court Act. Subdivision (b) of section 767 provides that the court shall discharge the person from custody after hearing that continued placement does not serve the purposes of article 7.
Section 711 of the Family Court Act which sets forth the purpose of article 7 provides that in a juvenile delinquency proceeding the court shall consider not only the needs and best interests of the respondent, but also the need for protection of the community. Moreover, the Juvenile Justice Reform Act of 1976 provides for restrictive placements for juvenile delinquents who have committed designated felony acts, up to age 21. Subdivision 2 of section 753-a sets forth the criteria the court shall consider in determining whether such restrictive placement is required, and one criteria includes the community’s need for protection. Indeed, in Matter of Quinton A. (68 AD2d 394, 405, supra), the court observed that " 'even if rehabilitation and punishment are not effective, the legislation is designed to remove certain youngsters from the community’ ”.
However, subdivision (a) of section 746 and section 743 of the Family Court Act preclude the weighing of dispositional alternatives before a fact-finding hearing has been held. Im *1029 plicit in those sections is the strong presumption of innocence in favor of the respondent.
Thus, the delay in filing the petition herein not only impairs the respondent’s due process rights, but seriously undermines the purposes of article 7 as set forth in section 711 of the Family Court Act. Already this youth has become criminally responsible as an adult, even before the juvenile justice system became operative.
Before final disposition of the motion, a hearing to determine whether the delay in filing this petition is justified is set down in Part 4 before Judge Eastman on June 30, 1980.

. In People v Singer (supra, p 253, n 2), the court observed: "It should be emphasized that we do not fully equate the accusation by the police with the formal commencement of criminal proceedings * * * We simply hold that in determining basic fairness to the defendant — which requires the State to minimize delay and, hence, anxiety attending a pending charge — we cannot always ignore the period preceding the formal filing of the accusatory instrument.” (Cf. United States v Marion, 404 US 307, supra.)

. It should be noted that the time spent preparing, filing and disposing of this pretrial motion is not chargeable to the prosecution. (People v Hall, 61 AD2d 1050.)