**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Edward DALLENBACH, Appellee.**

Superior Court of Pennsylvania.

Argued Oct. 27, 1998.
Filed April 30, 1999.

John H. Pavlock, Asst. Dist. Atty., Smethport, for the Com.

James P. Miller, Smethport, for appellee.

Before FORD ELLIOTT, JOYCE and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 The Commonwealth appeals from the September 19, 1997 Order granting the motion to dismiss the juvenile petition and finding juvenile appellee Dallenbach's due process right to a speedy trial in a juvenile delinquency proceeding was violated.

¶ 2 On or about March 15, 16 and 19, 1996, appellee Edward Dallenbach, a juvenile, allegedly performed the delinquent acts of harassment by communication,[1] ethnic intimidation[2] and terroristic threats.[3] The juvenile petition filed on March 29, 1996 alleged that Dallenbach telephoned a Spanish family, uttered ethnic slurs, told them they did not belong in this country because it is an Aryan nation and threatened to blow up their house.

¶ 3 Appellee contested the allegations of the petition and a hearing was set for August 20, 1996. On August 19, 1996, the

---

**1.** 18 Pa.C.S.A. § 5504(a)(1).

**2.** *Id.,* § 2710(a).

**3.** *Id.,* § 2706.

Commonwealth requested, and was granted, a continuance until a later date based on the unavailability of the victim to testify. On August 8, 1997, the court entered its order rescheduling the continued hearing for September 19, 1997. On September 18, 1997, appellee filed a motion to dismiss, which the court granted after hearing argument from both parties. This appeal followed.

¶ 4 The Commonwealth raises the following questions for our review.

1. Did the Juvenile Court err in concluding that a juvenile has a judicially recognized right to a speedy trial?

2. Even if a juvenile has a legally recognized right to a speedy trial, were the speedy trial rights of the juvenile involved in this case violated?

(Appellant's Brief at 1.)

¶ 5 In this matter, we must determine whether the court below committed an error of law or an abuse of discretion when it dismissed appellee's juvenile petition on the basis that his due process right to a speedy trial in his juvenile delinquency proceeding had been violated.

¶ 6 We begin by noting that Pa. R.Crim.P. 1100, **Prompt trial**, (a)(3), the provision requiring a criminal trial be held no later than 365 days from the date on which the complaint is filed, is not applicable to juvenile proceedings. Rule 1, **Scope of Rules**, provides:

## RULE 1. SCOPE OF RULES

(a) These rules shall govern criminal proceedings in all courts including courts not of record. Unless otherwise specifically provided, these rules shall not apply to juvenile or domestic relations proceedings.

Pa.R.Crim.P. (1)(a). Accordingly, the court below correctly found that, as a matter of law, Rule 1100's guarantee of a speedy trial to criminal defendants is inapplicable to juvenile proceedings.[4]

---

**4.** Pennsylvania Rule of Criminal Procedure 1100(a)(4) provides that Rule 1100 does not begin to run for a juvenile unless and until the case is transferred to the criminal or trial division.

¶ 7 The Commonwealth asserts there is no judicially recognized right to a speedy trial in juvenile proceedings and is correct in that, to date, both the Pennsylvania Appellate Courts and the United States Supreme Court have remained silent with respect to the issue of whether juveniles have the right to speedy trials. *Commonwealth v. Sadler*, 301 Pa.Super. 228, 447 A.2d 625 (1984); *Commonwealth v. Mitchell*, 283 Pa.Super. 455, 424 A.2d 897, 900 (1981). However, these same courts have not been silent with respect to the applicability of 14th Amendment due process rights to juveniles in delinquency proceedings.

¶ 8 The United States Supreme Court, in *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), set forth the following statement regarding the rights of juveniles in delinquency proceedings.

We do not mean by this to indicate that the hearing to be held must conform with all of the requirements of a criminal trial or even of the usual administrative hearing; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.

*Id.* at 562, 86 S.Ct. at 1057, 16 L.Ed.2d at 97–98. This recognition of a juvenile's right to the essentials of due process and fair treatment in juvenile proceedings has been defined more specifically by the United States Supreme Court over the years. The Court has held that there is no juvenile right to bail, to indictment by grand jury, to a public trial or to trial by jury. *Id.* at 555, 86 S.Ct. at 1054, 16 L.Ed.2d at 94. Yet, the Court found that the due process clause of the 14th Amendment requires juveniles in delinquency proceedings to receive adequate and timely written notice of charges and hearings, advice as to the right to counsel, retained or appointed, confrontation, cross-examina-

tion and the privilege against self-incrimination. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Additionally, the Court has held the due process clause requires that the proof beyond a reasonable doubt standard applicable in criminal cases be applied in the adjudication stage of a juvenile delinquency proceeding. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).

¶ 9 This Court summarized its understanding of the applicability of due process rights to juveniles in *Commonwealth v. Johnson*, 211 Pa.Super. 62, 234 A.2d 9, 15 (1967), an Opinion with which the plurality expressed agreement in *McKeiver v. Pennsylvania*, 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971).

> It is clear to us that the Supreme Court has properly attempted to strike a judicious balance by injecting procedural orderliness into the juvenile court system. It is seeking to reverse the trend whereby the 'child receives the worst of both worlds.' . . . .

*Id.* at 545, 91 S.Ct. at 1986, 29 L.Ed.2d at 661, quoting *Johnson*, at 74, 234 A.2d at 15. Moreover, the United States Supreme Court articulated that the applicable due process standard developed by *Gault* and *Winship* is "fundamental fairness" in juvenile delinquency proceedings. *McKeiver* at 543, 91 S.Ct. at 1985, 29 L.Ed.2d at 659.

¶ 10 The relative informality of juvenile proceedings, as compared to the rigidity of the rules of the adversarial criminal system, reflects the differing goals of the juvenile system, reformation and rehabilitation, as opposed to punishment and retribution. The role of the state as *parens patriae* for the juvenile in delinquency proceedings further emphasizes the contrast in goals of the two systems. The state's role as protector does not eliminate the juvenile's rights to a "fundamentally fair" proceeding under the due process clause. Rather, in its protective role the state must consider the importance of time in a developing child's life in attempting to fashion a successful rehabilitation program

for each juvenile. As the juvenile years are marked with significant changes and rapid development, children experience an acceleration in the passage of time so that, to a juvenile, one year may seem to be five. To ensure successful rehabilitation, the reformation program (including punishment) must commence within a reasonable time of the child's delinquent act so that the child can comprehend the consequences of his act and the need for reform. As a result, the concept of "fundamental fairness" in juvenile proceedings would seem to require that at least some limit be placed on the length of time between the delinquent act and the case disposition, including any associated punishment.

¶ 11 We turn to an examination of the only Pennsylvania statutory authority on the subject. The Juvenile Act, 42 Pa. C.S.A. § 6335(a), **Release or holding of hearing**, provides that a hearing must be held within ten days of the filing of a juvenile petition *when the child is in detention or shelter care,* or the child must be released.[5] This provision specifically grants a ten-day speedy trial right to juveniles who have committed an offense worthy of pre-hearing detention. The statute provides no similar speedy trial right for juveniles who have committed less serious offense(s) and have not been held in detention. There would, thus, appear to be no time limit imposed as to when a hearing must be held following the filing of a juvenile petition, unless constitutional due process so requires.

¶ 12 The Pennsylvania Supreme Court previously has considered the question of whether the specific speedy trial right of Rule 1100 is required by the United States Constitution and answered in the negative. *Commonwealth v. Myrick*, 468 Pa. 155, 161, 360 A.2d 598, 600 (1976). Additionally, we have stated that Rule 1100 is not required by the 6th Amendment of the United States, but intended

---

**5.** This provision does not apply to the instant matter because Dallenbach was not in deten-

tion pending a hearing.

only to implement and give substance to that provision. *Commonwealth v. Bond,* 350 Pa.Super. 341, 504 A.2d 869, 877 (1986); *Commonwealth v. Sadler,* 301 Pa.Super. 228, 447 A.2d 625, 627 (1982); *see Jones v. Commonwealth,* 495 Pa. 490, 499, 434 A.2d 1197, 1201 (1981). In consideration of this same question, the United States Supreme Court has stated "we find no constitutional basis for holding that the speedy trial right can be quantified into a specified number of days or months." *Barker v. Wingo,* 407 U.S. 514, 523, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972). As a result, it is clear that neither due process nor the United States Constitution mandate that juveniles (or adults) receive a 6th Amendment speedy trial right in the specific, quantified form of Rule 1100.

¶ 13   No Pennsylvania decision has held that juveniles, under the due process clause of the 14th Amendment, have the right to a speedy trial. However, courts in other jurisdictions have held that due process requires that juveniles be afforded the right to a speedy trial. *Sadler, supra* at 627 n. 4; *see United States v. Furey,* 500 F.2d 338 (2nd Cir.1974); *Piland v. Clark County Juvenile Court Services,* 85 Nev. 489, 457 P.2d 523 (1969); *P.V. v. District Court,* 199 Colo. 357, 609 P.2d 110 (1980); *In the Matter of Anthony P.,* 104 Misc.2d 1024, 430 N.Y.S.2d 479 (1980).

¶ 14   In *Furey,* the 2nd Circuit Court of Appeals cited *McKeiver* and *Gault* as support for its finding that the Eastern District's *Plan for Achieving Prompt Disposition of Criminal Cases,* requiring the government to be ready for trial within six months of arrest, is applicable to juvenile delinquency proceedings. *Furey, supra* at 340–342. In so finding, the Court of Appeals noted that "the deterrence afforded by prompt disposition, the potential prejudice to any defense arising from delay as well as the disruption and anxiety created by a criminal charge are present whether the accused be a juvenile or an adult." *Id.* at 341–342.

¶ 15   The Supreme Court of Colorado has held that the minimal due process guarantees of a fundamentally fair procedure, under *McKeiver* and *Gault* require that juveniles in delinquency proceedings be afforded the statutory and constitutional speedy trial rights. *P.V. v. District Court,* at 360, 609 P.2d 110. In finding that its statutory speedy trial provisions requiring a trial within six months after a not guilty plea apply to juveniles, the Court was persuaded by both the *Furey* Court's reasoning and consideration of the psychological harm and stigmatization of the juvenile which could result from a long delay. *P.V., supra* at 361, 609 P.2d 110.

¶ 16   In *Piland v. Clark County Juvenile Court Services,* the Nevada Supreme Court held that a juvenile has a constitutional right to a speedy trial under the due process clause. *Id.* at 492, 457 P.2d 523. Citing *Gault* and its minimum standards of due process that must be followed in juvenile proceedings, the Court stated "if the youthful offender were not entitled to a speedy trial, he conceivably might never be provided a forum in which he could enjoy the basic rights of due process specifically given to him in *Gault.*" *Piland, supra* at 491–492.

¶ 17   The Family Court of New York in New York County considered whether juveniles have a speedy trial right in *In the Matter of Anthony P.*. Like in Pennsylvania, the New York criminal speedy trial provisions are not applicable in juvenile delinquency proceedings. *Id.* at 1026, 430 N.Y.S.2d 479. However, the New York Court found that the due process concept of "fundamental fairness" in *McKeiver* and *Winship* requires that the constitutional right to a speedy trial be applied to juveniles in delinquency proceedings. *Id.*[6]

¶ 18   The Pennsylvania Legislature amended the purpose of the Juvenile Act,

---

6. The Court went on to discuss the speedy trial requirements under New York's due pro-

cess clause.

42 Pa.C.S.A. § 6301(b)(2), in 1995, to read as follows:

> (2) Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation *which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.*

(Emphasis added.) This section is clear evidence of the Legislature's intent to protect the community while rehabilitating and reforming juvenile delinquents. Protection of the community from repeat delinquent acts would seem to demand reasonable promptness in the disposition of juvenile proceedings. Assuming, arguendo, that a juvenile does have a due process speedy trial right, we examine the facts of the case under *Barker, supra,* in which the standards are set forth for evaluating an alleged denial of a speedy trial. Under *Barker,* the four related factors to be used in determining if a speedy trial was denied are the length of delay, the reason for delay, the defendant's assertion of his right and the prejudice to defendant. *Id.* at 530, 92 S.Ct. at 2192, 33 L.Ed.2d at 117.

¶ 19 In the instant case, the length of delay was approximately 18 months between the filing of the juvenile petition and the scheduled hearing. The reason for this lengthy delay appears to be the lack of any formal scheduling procedures which ensure that contested juvenile hearings are scheduled on a timely basis. The Commonwealth was initially granted a continuance of the hearing until a later date based on the unavailability of a key witness. No further effort was made to set a new hearing date until a year had passed. There is no explanation for this delay other than general system breakdown. In 1997, the Juvenile Probation Department secretary testified that only three (of thirteen pending) contested hearings had been held (H.T., 9/19/97, at 9, 12). Two of the contested hearings held were on petitions filed after Dallenbach's because, as the secretary testified, these contained "more pressing matters." (H.T. at 7, 10, 11.) The Court Administrator testified that contested hearings are not regularly scheduled each month on the days allotted for juvenile matters, but due to heavy case loads are assigned to a special day which may or may not be the first available date for the hearing (H.T. at 15–17). In this case, the Court Administrator could not state if the Dallenbach hearing was scheduled for September 19, 1997 because this was the first available time for hearing (H.T. at 15–17). As a result, we must conclude there was no apparent legitimate reason for the delay. Next, juvenile Dallenbach asserted his right to a speedy trial in his timely filed motion to dismiss. (Motion to Dismiss, 9/18/97.) Finally, juvenile Dallenbach may have suffered prejudice in that his witness, Matt Russell, is now unavailable to testify. (Motion to Dismiss, 9/18/97.) Accordingly, if Dallenbach has a speedy trial right which he may assert as a juvenile, his speedy trial right may have been violated.

¶ 20 After careful consideration of the standard of "fundamental fairness" as applied to juvenile proceedings, we hold that the due process clause of the 14th Amendment makes applicable to juveniles a 6th Amendment speedy trial right in delinquency proceedings. We expressly do *not* find that juveniles are afforded a speedy trial right as set forth in the specific form of Rule 1100. Further, we hold that the trial court committed neither an error of law or an abuse of discretion when it found that juvenile Dallenbach's due process right to a speedy trial had been violated under the facts of this case, however, it failed to articulate the nature of the prejudice which warranted dismissal. We need not specify an exact time within which a juvenile petition must be heard, believing that the parens patraie responsibility exercised by trial judges, as here, will better serve the needs of Pennsylvania's juvenile courts than a per se rule.

There does not appear to be a general breakdown in the juvenile courts and it appears that juvenile proceedings are far more expeditiously heard than adult.

¶ 21 Periodically, the Supreme Court has been asked to involve itself directly in the supervision of the juvenile courts of Pennsylvania by establishing in one of the rules committees, rule-making powers similar to those employed in other branches and sections of the Court. After evaluating the requests, which generally emanate from public defenders associations, youth advocates associates and less frequently, from district attorneys, such requests have been rejected with continuing adherence to Rule 1 of the Criminal Rules and the Rules of Civil Procedure. The underlying reason for this is that the Juvenile Act of Pennsylvania itself is a procedural act, frequently reviewed and amended, which maintains currency with the rapidly shifting problems relating to juvenile delinquency, criminal and dependent behavior. A rules committee could not replicate the resources of the Legislature in dealing with problems which are as much social/psychological as they are delinquent/criminal in nature. When enacted, the laws were incorporated in the Pennsylvania Code, 42 Pa.C.S.A. § 6301 *et seq.*, which sections concern the judiciary and judicial procedure. No other branch or section of the courts has a similar act which definitively spells out the precise operation of the court from acquiring jurisdiction through detention, hearings, adjudication and disposition. Adding a layer of rules over this extensive legislative scheme of procedure would be redundant and/or would cause confusion and delay.

¶ 22 Secondly, the Legislature, in an enlightened move almost 40 years ago, created a commission known as the Juvenile Court Judges' Commission (Commission). The Commission has operated effectively over the intervening years to meld the legal and social philosophy of the juvenile court into a progressive and dynamic program of education of judges and staff, enhance professionalism throughout the probation offices and provide standards of administration and operation of court facilities which make Pennsylvania a leader in treatment of juvenile delinquency in the country and second to none. The Commission has been copied by a few other states, but its effectiveness has not been matched.

¶ 23 The Commission was created in the Department of Justice by Act of December 21, 1959, 11 P.S. 270–1, 270–5, and its powers were transferred to the Office of General Counsel by Act of October 15, 1980, P.L. 950, No. 164, §§ 301, 502. 11 P.S. § 270–1(a) provides:

§ 270–1. **Commission created; counties of first class**

(a) There is hereby created in the Department of Justice, a "Juvenile Court Judges' Commission."

§ 270–2. **Members; chairman; quorum**

The commission shall consist of nine judges who shall be appointed by the Governor from a list of judges, serving in the juvenile courts, selected and submitted by the Chief Justice of Pennsylvania. Three of the first nine appointed shall serve for three years, three for two years, and three for one year. Thereafter, the term for all members shall be for three years. The commission shall, annually, selected one of their number to be chairman and one to be secretary. Five members shall constitute a quorum.1959, Dec. 21, P.L.1962, § 2.

¶ 24 The Commission involves the highest members of the executive and judicial branch in its selection and governance and through its grant of powers engages the leading judges of Pennsylvania and their staff consultants in dealing with the vast array of administrative, procedural and operational matters of a large and comprehensive juvenile justice system. Section 270–4, **Powers and duties**, provides:

The commission shall have the power and its duty shall be—

(1) To advise the juvenile court judges of the Commonwealth in all mat-

ters pertaining to the proper care and maintenance of delinquent children.

(2) Examine the administrative methods and judicial procedure used in juvenile courts throughout the State, establish standards and make recommendations on the same to the courts.

(3) Examine the personnel practices and employment standards used in probation offices in the Commonwealth, establish standards and make recommendations on the same to the courts.

(4) Collect, compile and publish such statistical and other data as may be needed to accomplish reasonable and efficient administration of the juvenile courts.1959, Dec. 21, P.L.1962, § 4.

¶ 25 The powers and mandate are real and effective. An example of the power of its mandate is the Stanziani Consent Order [7] in which it was selected by the Commonwealth to negotiate and implement a consent decree with parties to a class action against detention practices in Montgomery and other counties in 1987, when standards for juvenile detention were implemented. The consent decree remained in effect until 1996, while the standards continue to be applied. The Commission has been able to acquire total cooperation and acceptance of its standards because they flow from professional staff directed by juvenile judges appointed by the Governor of Pennsylvania upon recommendation of the Chief Justice of Pennsylvania. A further positive reinforcement of acceptance of the standards is the requirement that compliance is necessary for participation in the Commission's Grant in Aid Program, which amounts to 15–20% of the expense of juvenile court probation operations each year. The following are the major standards promulgated by the Commission pursuant to authority granted by 11 P.S. § 270–1 et seq., and which are universally implemented throughout Pennsylvania juvenile courts:

- Standards Governing the Operation of a Juvenile Probation Merit System;
- Standards Governing Juvenile Court Intake;
- Standards Governing the Use of Secure Detention Under the Juvenile Act; and [8]
- Standards Governing Hearings and Administrative Reviews for Children Held in Secure Detention.

The circumstances under which secure detention may be authorized or ordered are comprised of six detailed specifications pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6301 et seq.: a. on the basis of an alleged offense or on the basis of an alleged offense and the child's current status with the Court or prior record; b. on the basis

7. *Coleman v. Stanziani*, E.D.Pa.1983, 570 F.Supp. 679, *mandamus denied, appeal dismissed*, 3d Cir., 735 F.2d 118, *certiorari denied*, 469 U.S. 1037, 105 S.Ct. 515, 83 L.Ed.2d 404 (1984) (challengers to constitutionality of Pennsylvania juvenile detention statutes were not required to exhaust state remedies before bringing civil rights action when state standards were lacking and the state Supreme Court could not narrow them without rewriting them.)

8. The preamble to this standard provides, in part:

The "Standards Governing Secure Detention Under The Juvenile Act" adopted by the Juvenile Court Judges' Commission were developed with an understanding that overcrowding in juvenile detention centers presents danger to both residents and staff and can severely disrupt programs and services. Consequently, juvenile court judges and chief juvenile probation officers should take a leadership role in advocating for adequate juvenile detention services and alternatives, in monitoring detention center populations at the local level, and in developing strategies to be undertaken as facilities approach capacity.

These Standards were also developed on the premise that decisions regarding admissions to secure detention facilities must be based on a commitment to utilize the most appropriate level of care consistent with the circumstances of the individual case. When the admission of a child to a secure detention facility is being considered by a judge, master, or juvenile probation officer, preference should be given to non-secure alternatives which could reduce the risk of flight or danger to the child or community.

of a child's status as an absconder or fugitive; on the basis of a child's record of failing to appear at previous juvenile hearings; or because of extraordinary circumstances which require secure detention to prevent a child from absconding; c. pending disposition, subsequent to a finding that a child committed a delinquent act or is a delinquent child; d. following disposition pending transfer to placement; e. on the basis of a child's status pending or subsequent to a disposition review hearing; and f. on the basis of extraordinary and exceptional circumstances. The standards governing the use of secure detention under the Juvenile Act are a comprehensive and detailed guide as to when and under what circumstances secure detention, prehearing and post-adjudication/ disposition may be utilized.

¶ 26 Coupled with the Standards Governing the Use of Secure Detention are Standards Governing Hearings and Administrative Reviews for Children Held in Secure Detention.[9]

¶ 27 It is evident that the juvenile justice system has implemented far more detailed, specific, individualized and time-limited safeguards for children awaiting hearing and disposition than the adult system. The need for applying adult rules of criminal procedure is clearly unnecessary, as recognized by Rule 1, *supra.*

¶ 28 As to the facts of this case, in which 18 months elapsed before the minor was brought before the court for an adjudicatory hearing, there is no standard applicable to this situation. In the absence of a standard and the non-application of the speedy trial rules, we are left with reliance on the fundamental fairness doctrine which, since the 1960s, has guided the appellate courts in carving out due process rights for juveniles. We are aware of no case where a due process right in a juvenile case was recognized or in which the juvenile in a delinquency proceeding received less consideration than an adult in a criminal case of similar circumstances. In a case where, without justification, a person charged with a crime as an adult, who through no fault of his own, is not brought to trial within 365 days (when not incarcerated), or 180 days (when incarcerated), as detailed above, he is entitled to dismissal of the charges. Here, the unjustified delay was one and one-half (1½) years, more than 540 days. Because of the extraordinary delay in this case, recognized by the trial judge as being inexcusable and without justification, fundamental fairness may require dismissal. We do not believe, under the excellent governance of the juvenile justice system in Pennsylvania, that this is a problem which requires appellate court intervention or rule making, and decline to set limits, as has been done in several other states.[10] Rather, we direct our Opinion to the Juvenile Court Judges' Commission for study and consideration as to whether, when a child is not in secured detention, a standard should be

---

9. The standards relating to Hearings and Administrative Reviews apply specifically and only to children held in Secure Detention, may be summarized in pertinent part as follows:

I. Pre–Adjudication Detention—Within 72 hours of admission a detention hearing is required pursuant to 42 Pa.C.S.A. § 6335.
II. Post–Adjudication/Pre–Disposition Detention—Within 20 days of adjudication, a disposition hearing must be held to determine the disposition or the need for continued detention. Every 20 days thereafter, until disposition has been effected, while the child is in detention, there must be a review hearing (some placements are at a premium and require long pre-admission procedures or waiting periods).

Other review standards relate to IV., failure to adjust in placement; V., violation of probation; VI., specific placement or disposition ordered by the court and need for continued detention; and VII., which requires the Chief Juvenile Probation Officer to provide to the court such information as necessary to ensure that all children placed in secure detention have the continued appropriateness of their detention determined by the court or designee in accordance with the standards.

10. The standards applicable to secure detention do not provide for dismissal or sanctions as it is believed the policy implementation under the governance of the Commission assures reasonable compliance with them.

adopted for hearings on charges of delinquency in pursuance of fundamental fairness within a reasonable time.[11]

¶ 29 While we have considered the primary constitutional guide, *Barker, supra,* in relation to this case and find that, upon our review of the facts of this case, the trial court could have found adequate reasons for dismissal, we believe the trial court did not articulate on the record the actual prejudice, if any, the juvenile would have suffered by proceeding with the hearing. The prejudice alleged by counsel for appellant is that an essential witness to his case, who was available earlier, is now unavailable because he attends college in New Jersey (T.T., 9/19/97, at 23). Moreover, he contends that an adverse ruling in this case, under recent changes in the sentencing guidelines, will impact unfavorably on his prior record score should he get into trouble as an adult (T.T. at 27). Additionally, in a recent case decided by the Pennsylvania Supreme Court, *Commonwealth v. Joseph Wayne Anders, Jr.,* — Pa. ——, 725 A.2d 170 (1999), the Supreme Court reversed this Court sitting en banc and remanded for a hearing on the issue of prejudice due to an untimely sentencing, pursuant to appellant's speedy trial rights. *Anders* requires that a defendant, who is sentenced beyond 60 days of the date of conviction in violation of Pa. R.Crim.P. 1405, **Procedure at Time of Sentencing,** A. **Time for Sentencing,** is entitled to discharge only when the defendant can demonstrate that the delay in sentencing prejudiced him or her. This standard also applies to all other proceedings relating to a speedy trial. For that reason, we vacate the Order dismissing this case and remand to the trial court for the purpose of its review, based on *Barker,* as to the prejudice appellant would have suffered. In the future, should the Juvenile Court Judges Commission create standards to be applied in situations such as this, both the trial court and this Court will have a more precise means of determining when a juvenile's rights to a speedy trial have been violated.

¶ 30 Since the trial court failed to make specific findings of prejudice on the record, we decline to speculate on that issue and remand to the trial court for hearing and a finding on the issue of prejudice. If the court, upon hearing and review, *determines the juvenile was not prejudiced by the delay,* the case shall be reinstated for hearing. If the trial court finds that the juvenile was prejudiced by the delay, the Order of dismissal shall be reinstated.

¶ 31 Order vacated and case remanded for hearing and findings consistent with this Opinion.

¶ 32 Jurisdiction relinquished.

¶ 33 JOYCE, J., concurs in the result.

---

11. Appellee contends the Commonwealth's claims are waived by virtue of its failure to file a concise statement of matters complained of in response to the trial court's directive pursuant to Pa.R.A.P.1925(b). Appellee's Brief at 8. Our Supreme Court has recently held "[a]ny issues not raised in a 1925(b) statement will be deemed waived." *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998). However, *Lord* clearly indicates the rule therein applies prospectively. *Id.* As this case arose before *Lord* was filed, it is inapplicable. Because the absence of a Rule 1925(b) statement has not deprived us of the benefit of the trial court's Opinion or otherwise substantially impeded our ability to engage in effective and meaningful review of appellant's claims, we decline to find them waived. *See Commonwealth v. Nelson,* 453 Pa.Super. 637, 684 A.2d 579, 580 (1996) (providing that waiver for failure to file a 1925(b) statement is not automatic; this Court will discharge its appellate function unless a failure to file the statement prevents meaningful appellate review).