J-A09044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.M.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.M.G. | No. 1547 MDA 2015 |

Appeal from the Adjudication of Delinquency July 6, 2015
in the Court of Common Pleas of Cumberland County
Criminal Division at No.: CP-21-JV-0000206-2014

BEFORE: FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                                    **FILED JULY 12, 2016**

Appellant, J.M.G., appeals from the dispositional order entered following his July 6, 2015 adjudication of delinquency of indecent assault.[1] On appeal, Appellant challenges the denial of his motion to suppress, the denial of his motion to dismiss based upon speedy trial concerns, and the admission of the victim's videotaped interview with the Children's Resource Center (CRC). For the reasons discussed below, we affirm.

We take the underlying facts and procedural history in this matter from the juvenile court's April 28 and September 8, 2015 opinions and our independent review of the certified record.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 3126(a)(7).

Appellant, (d.o.b. 8/27/96), has a long history of mental health hospitalizations. (*See* N.T. Suppression Hearing, 4/20/15, Exhibit 1 Discharge Summary, 3/17/13, at unnumbered pages 1-2). After attempting to choke his adoptive mother (Mother), Appellant, who was over age fourteen, voluntarily admitted himself to Philhaven. (*See id.*). Following treatment at Philhaven, Appellant agreed to a voluntary admission to Bradley Center, a residential treatment facility, on March 15, 2013. (*See id.*).

While at Bradley Center, Appellant had family therapy sessions, via telephone, once a week with Mother.[2] (*See* N.T. Suppression Hearing, 3/02/15, at 9). Mother and Appellant had one such session on September 26, 2013. (*See id.* at 10). Either later that day, or the next, Appellant's therapist called Mother and said that Appellant wanted to talk to her. (*See id.*). When Appellant called Mother, he told her he had been "inappropriate" with his adoptive sister (Sister). (*Id.*). Appellant did not provide any specific details. (*See id.* at 10-11). Mother, a mandated reporter, called Childline and "let them handle it."[3] (*Id.* at 11). Subsequently, because of the call, Children's Services took the case and began an investigation. (*See*

---

[2] Appellant's therapy was unrelated to being either a sexual offender or a victim of sexual abuse. (*See* N.T. Suppression Hearing, 3/02/15, at 25-27).

[3] A therapist from the Bradley Center also called Childline. (*See id.* at 23, 25).

*id.* at 19). In addition, CRC contacted Mother and told her that they needed to interview Sister. (*See id.* at 13).

On October 8, 2013, Scott Cray of Dauphin County Children and Youth Services contacted Detective Autumn Lupey of the Lower Paxton Township Police Department and notified her about the CRC interview. (*See id.* at 28-29). Detective Lupey observed the interview and heard Sister disclose that Appellant sexually abused her. (*See id.* at 29, 32, 34).

On November 25, 2013, Detective Lupey filed a written allegation report in Dauphin County. (*See* Juvenile Court Opinion, 4/28/15, at 1). Dauphin County transferred the allegation report to Cumberland County[4] in late December 2013. (*See id.* at 3). On January 30, 2014, a juvenile probation officer conducted an intake interview with Appellant[5] at the Children's Home of Reading. In January 2014, Appellant's counsel contacted the Cumberland County District Attorney's office to express concerns about the legitimacy of proceeding against Appellant; then Assistant District Attorney (ADA) Richard Bradbury, Jr., advised counsel to file a motion to suppress. (*See* N.T. Suppression Hearing, 4/06/15, at 8-9). At the time, there was a standing policy between the Cumberland County District

_____

[4] While Mother resided in Dauphin County at the time of the alleged incidents, she now resides in Cumberland County. (*See* N.T. Hearing on Finding of Fact, 5/11/15, at 34).

[5] We note that Appellant turned eighteen in August 2014. (*See* Trial Ct. Op., 4/28/15, at 3).

Attorney's Officer, the Cumberland County Probation Office, and the Cumberland County Public Defender's Office, to have weekly meetings to discuss all pending juvenile cases. (*See id.* 9-10). The parties frequently discussed the instant matter, and were assured by defense counsel that the filing of a motion to suppress all evidence in the case was imminent. (*See id.* at 10, 22-23). ADA Bradbury did not schedule the case for a status hearing during the period between January 2014 and September 2014, because he believed such a hearing would be futile since the juvenile court would just continue the matter pending the filing of a motion to suppress. (*See id.* at 13-14). Ultimately, on September 23, 2014, the Commonwealth filed a written allegation and on September 24, 2014, it filed a delinquency petition.

On November 21, 2014, Appellant filed an omnibus pre-trial motion. In the motion, Appellant alleged that his incriminating statements were not admissible under this Court's decision in *In re C.O.*, 84 A.3d 726 (Pa. Super. 2014), *appeal denied*, 97 A.3d 742 (Pa. 2014). (*See* Omnibus Pre-Trial Motion, 11/21/14, at unnumbered page 2). Appellant also sought to dismiss the matter on speedy trial grounds. (*See id.* at unnumbered pages 3-4). The juvenile court held hearings on Appellant's motion on March 2, April 6, and April 20, 2015. On April 28, 2015, the juvenile court denied the motion.

A finding of fact hearing took place on May 11, 2015. During the hearing, Appellant objected to the showing of the video of the CRC

interview, arguing that it was not done under oath and that there was no opportunity for cross-examination during the interview. (***See*** N.T. Finding of Fact Hearing, 5/11/15, at 22). The juvenile court overruled the objection. (***See id.***). On July 6, 2015, the juvenile court adjudicated Appellant delinquent and remanded him. On July 7, 2015, Appellant filed a post-dispositional motion. The juvenile court denied the motion on September 8, 2015. The instant, timely appeal followed.[6]

On appeal, Appellant raises the following questions for our review:

I.  Did the [juvenile] court err in failing to suppress statements made by the juvenile while in mental health treatment pursuant to the holding of this Court in [***C.O.***, ***supra***] and protected by the physician-patient privilege which applied to the juvenile while in mental health treatment?

II.  Did the Commonwealth fail to proceed diligently with regards to the speedy trial rights of the juvenile when it took no action for over one year thus subjecting the juvenile to potential Act 21 lifetime involuntary commitment?

III.  Did the [juvenile] court err in failing to hold an *in-camera* hearing prior to allowing hearsay statements made by the juvenile witness as required by 42 Pa.C.S.A. § 5985.1?

IV.  Did the [juvenile] court err in failing to find that the Commonwealth did not provide notice to the juvenile regarding the use of hearsay statements as required by 42 Pa.C.S.A. § 5985.1?

_____

[6] The juvenile court did not order Appellant to file a concise statement of errors complained of on appeal. ***See*** Pa.R.A.P. 1925(b). The Juvenile court did not issue any additional opinions. ***See*** Pa.R.A.P. 1925(a).

(Appellant's Brief, at 5) (unnecessary capitalization omitted).

In the first claim, Appellant avers that the juvenile court erred in denying his motion to suppress. (*See* Appellant's Brief, at 12-17). Specifically, Appellant maintains that the juvenile court's ruling runs afoul of this Court's decision in *C.O.*, *supra*. (*See id.* at 15). He further alleges that the therapist's decision to make a Childline report was "in direct contravention of [his] rights pursuant to the [physician-patient] privilege and [] confidentiality." (*Id.*). Appellant argues that because the Childline report led to the police contacting the victim, all evidence "adduced from the [S]ister are clearly fruits of the poisonous tree[.]" (*Id.* at 16). We disagree.

When we review a ruling on a motion to suppress, "[w]e must determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from these findings." *Commonwealth v. Holton*, 906 A.2d 1246, 1249 (Pa. Super. 2006), *appeal denied*, 918 A.2d 743 (Pa. 2007) (citation omitted). Because the suppression court in the instant matter found for the Commonwealth, we will consider only the testimony of the Commonwealth's witnesses and any uncontradicted evidence supplied by Appellant. *See id.* If the evidence supports the suppression court's factual findings, we can reverse only if there is a mistake in the legal conclusions drawn by the suppression court. *See id.*

Initially, for purposes of clarity, we note that the Commonwealth never sought to admit any statements Appellant made to his therapist. (*See* N.T. Suppression Hearing, 3/02/15, at 46). Rather, the sole statements at issue are those he made to Mother and the statements of Sister, which Appellant claims are fruit of the poisonous tree. (*See* Appellant's Brief, at 15-17).

Appellant relies on this Court's decision in *C.O.*, *supra* in support of his contention that the statements are inadmissible. (*See id.*). We find such reliance misplaced. In *C.O.*, the juvenile court had adjudicated the appellant delinquent of sexual offenses; the court placed the appellant in a residential treatment facility for sex offenders, and as part of the mandated treatment modality, the facility required offenders to disclose all previous sexual offenses. *See C.O.*, *supra* at 728-29. The staff would report previously undisclosed sexual offense to the relevant authorities. *See id.* at 729. Further, because the appellant was not progressing with treatment, the juvenile court extracted a promise from him that he would be compliant with all future treatment options. *See id.* Subsequently, the appellant disclosed that he had sexually abused a previously unknown victim; a staff member obtained detailed information from the appellant about the abuse, had him fill out and sign a form describing the abuse, and reported the abuse to the authorities. *See id.* at 729-30. The staff member did not inform the appellant of his rights. *See id.* at 730.

After a hearing, the juvenile court suppressed the statements made by the appellant. *See id.* We affirmed. In so doing, we noted that in order to successfully complete the sexual offender treatment program, the appellant was required to reveal details of any other undisclosed sexual offenses. *See id.* at 733-34. Further, the juvenile court specifically required the appellant to promise to cooperate and answer all questions posed to him by staff; and mandatory reporting laws required the staff to inform law enforcement of any new allegations. *See id.* at 734. We concluded, therefore, that the appellant was in custody at the time he made the statements; accordingly, the staff was required to provide *Miranda*[7] warnings. *See id.*

Here, at the time he made the statements, no court had adjudicated Appellant delinquent or committed him to a sexual offender treatment facility. Rather, Appellant voluntarily admitted himself[8] first to Philhaven and then to the Bradley Center, not for treatment of sexual offenses, but for on-going mental health problems. (N.T. Suppression Hearing, 4/20/15, Exhibit 1 Discharge Summary, 3/17/13, at unnumbered pages 1-2; *see also* N.T. Suppression Hearing, *supra* at 12, 17). There is nothing in the record

_____

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[8] While Appellant strenuously argues that his commitment was involuntary, he has pointed to nothing in the record that supports this contention. (*See* Appellant's Brief, at 12-15). Rather, his argument appears to be more of a public policy argument that we cannot consider any dependent juvenile capable of voluntarily committing him or herself to mental health treatment. (*See id.*).

which shows that Appellant was required to participate in therapy as a condition of leaving the facility or that he was required to discuss any particular topic in therapy. During his stay at Bradley, Appellant made some type of statement to his therapist, which prompted the therapist to contact Childline. (***See*** N.T. Suppression Hearing, 3/02/15, at 3). Although Appellant did call Mother and disclose the sexual abuse to her, nothing demonstrates that this was at the prompting of the therapist. (***See id.*** at 10-11). Further nothing shows that, other than alerting Mother that Appellant wished to speak to her, the therapist or any other staff at Bradley Center was involved in the call or prompted Appellant's statement in any way, or dictated its content. (***See id.***). Mother also contacted Childline and it is not readily apparent from the record which call to Childline prompted CRC to contact Mother and schedule the interview with Sister. (***See id.*** at 11, 13, 19). Thus, with the exception of the fact that Appellant's therapist was a mandated reporter (as was Mother), none of the coercive circumstances that were present in ***C.O.***, are present in the current matter. Under Appellant's expansive reading, the holding in ***C.O.*** would be extended to every treatment situation, regardless of the circumstances. (***See*** Appellant's Brief, at 8-9). We see nothing in ***C.O.*** that indicates that the Court wished to extend its holding to such an extreme. ***See C.O.***, ***supra*** at 734.

Appellant also claims that his therapist violated doctor-patient privilege by reporting the abuse to Childline. (*See* Appellant's Brief, at 15). However, Appellant has waived this claim. Appellant did not seek to suppress the evidence on this basis. (*See* Omnibus Pre-Trial Motion, 11/21/14, at unnumbered page 2). It is well-settled that, "[a]ppellate review of an order denying suppression is limited to examination of the precise basis under which suppression initially was sought; no new theories of relief may be considered on appeal." ***Commonwealth v. Freeman***, 128 A.3d 1231, 1241 (Pa. Super. 2015) (citations omitted). Thus, as Appellant did not raise his privilege claim in his motion to suppress, he waived it. ***See id.*** Accordingly, because the issues Appellant raises in his first claim are either waived or meritless, we find that "the record supports the suppression court's factual findings" as well as "the legitimacy of the inferences and legal conclusions drawn from [them]. ***Holton***, ***supra*** at 1249 (citation omitted).[9]

In his second claim, Appellant contends that "[t]he Commonwealth's failure to diligently proceed in this matter . . . is violative of [his] speedy trial rights[.]" (Appellant's Brief, at 9). We disagree.

_____

[9] Because we find that this Court's decision in ***C.O., supra*** did not bar the admission of Appellant's statements and because he waived his doctor-patient privilege argument, we need not address his claim that Sister's statements are fruit of the poisonous tree.

- 10 -

The Pennsylvania Rules of Juvenile Court procedure state, in pertinent part: "[i]f the juvenile is not detained, the adjudicatory hearing shall be held within a reasonable time." Pa.R.J.C.P. 404(B). This Court has held that juveniles have a Sixth Amendment right to a speedy trial in delinquency proceedings; however, we have declined to set an exact time limit. *See Commonwealth v. Dallenbach*, 729 A.2d 1218, 1222-23 (Pa. Super. 1999). There must be a legitimate reason for a delay in scheduling an adjudicatory hearing. *See id.* In *Dallenbach*, this Court applied the four-part test enunciated in the United States Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972), to determine whether the delay violated a juvenile's speedy trial rights. *See id.* at 1222. Thus, pursuant to *Barker*, we must examine: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) the prejudice to the defendant. *See id.*

Here, the length of the delay was approximately eighteen months, (*see* Appellant's Brief, at 19). This is the same period of delay that the *Dallenbach* Court referred to as "lengthy." *Dallenbach*, *supra* at 1222. Thus, pursuant to *Dallenbach*, this factor favors Appellant. *See id.*

The next factor is the reason for the delay. On appeal, the Commonwealth argues that the delay was because the juvenile was undergoing pre-existing mental health treatment and there were pending adult charges against him. (*See* Commonwealth's Brief, at 23). However,

- 11 -

the Commonwealth did not raise these defenses during the suppression hearing. At the suppression hearing, as discussed above, former Cumberland County A.D.A. Richard Howard Bradbury, Jr. testified that there were regular meetings between himself, juvenile probation, and Appellant's counsel, and that counsel informed him that he believed that the matter would be disposed of via a motion to suppress, which counsel was preparing to file. (**See** N.T. Suppression Hearing, 4/06/15, at 9-10). Cumberland County Juvenile Probation employee Emily Garner confirmed this testimony. (**See id.** at 22-23). A.D.A. Bradbury acknowledged that he could have requested a status hearing, but felt there was no point, because the juvenile court would merely continue the case pending the filing of the motion to suppress. (**See id.** at 13-14). Thus, the record shows that while there was a lengthy delay between the filing of the written allegation and the delinquency petition, the parties were actively discussing the case and the Commonwealth reasonably relied on defense counsel's repeated representations that this matter could be resolved via a motion to suppress, which would be filed in the near future. (**See id.** at 9-10, 13-14, 22-23). Thus, we find that this factor favors the Commonwealth.

As to the third factor, Appellant filed his motion to dismiss on speedy trial grounds within thirty days of the filing of the delinquency petition. (**See** Omnibus Pre-Trial Motion, 11/21/14, at unnumbered pages 3-4). Therefore, Appellant promptly asserted his right to a speedy trial.

As to the final factor, it is settled that a defendant must specifically prove prejudice; general allegations of prejudice are insufficient. **See Commonwealth v. DeBlase**, 665 A.2d 427, 438 (Pa. 1995). A defendant must show: "(1) impairment of witness' memories; (2) loss of evidence; (3) loss of witnesses; or (4) other specifically articulable facts representing a substantial interference with his ability to conduct a defense." **Id.** (citation omitted). In **Dallenbach**, the appellant alleged that a defense witness was now unavailable to testify. **See Dallenbach**, **supra** at 1222. While, we stated that this allegation might be sufficient to demonstrate actual prejudice, we found that the trial court had not made a specific finding of fact regarding the witness's unavailability and remanded the matter for further fact-finding. **See id.** at 1226.

Here, Appellant has not alleged any impairment of witness' memories, loss of evidence, loss of witnesses or other facts that represented substantial inference with his ability to conduct a defense. (**See** Appellant's Brief, at 18-21). The sole prejudice alleged by Appellant is that he **might** be subject to involuntary commitment pursuant to 42 Pa.C.S.A. § 6403(a). (**See** Appellant's Brief, at 20-21). This statute allows for the involuntary commitment of an adult who had been previously adjudicated delinquent for act[s] of sexual violence, remains in an institution or facility pursuant to that adjudication at age twenty, and is found to be in need of continued treatment. **See** 42 Pa.C.S.A. § 6403(a). However, this claim is mere

speculation and not the type of actual prejudice the law requires. ***See***

***DeBlase***, ***supra*** at 438; ***Dallenbach***, ***supra*** at 1226. Thus, because

Appellant has not shown that he was prejudiced by the delay, the trial court

did not err in denying his motion to dismiss for speedy trial violations. ***See***

***id.***

In his third and fourth claims, Appellant challenges the admission of

Sister's videotaped interview at CRC into evidence. (***See*** Appellant's Brief,

at 22-25). Specifically, Appellant claims that the juvenile court failed to hold

an *in camera* evidentiary hearing as required by 42 Pa.C.S.A. § 5985.1.[10]

_____

[10] The statute provides in relevant part:

**(a) General rule.—**An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S.[A.] Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child [ ]:

(i)    testifies at the proceeding[.]

42 Pa.C.S.A. § 5985.1(a)(1) and (a)(2)(i).

(*See id.* at 22-23). Appellant further argues that the Commonwealth failed to provide proper notice of its intent to use the videotape as required by 42 Pa.C.S.A. § 5985.1.[11] However, Appellant waived these claims.[12]

As we noted above, at the finding of fact hearing, while Appellant did object to the admission of the videotape, he did so on the grounds that it was not done under oath and that there was no opportunity for cross-

_____

[11] The statute states in pertinent part:

> **(b) Notice required.—**A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

42 Pa.C.S.A. § 5985.1(b).

[12] We briefly note that this Court has held that:

> [w]ith regard to evidentiary challenges, it is well established that [t]he admissibility of evidence is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. Furthermore, if in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Serrano*, 61 A.3d 279, 290 (Pa. Super. 2013) (citation and quotation marks omitted).

examination during the interview. (***See*** N.T. Finding of Fact Hearing, 5/11/15, at 22). He did not argue that the trial court and the Commonwealth failed to comply with various aspects of 42 Pa.C.S.A. § 5985.1. (***See id.***). This Court has stated that, "[w]here a specific objection is interposed, other possible grounds for the objection are waived." ***Commonwealth v. Shank***, 883 A.2d 658, 672 (Pa. Super. 2005), *appeal denied*, 903 A.2d 538 (Pa. 2006) (citations omitted). Because Appellant did not object on the grounds of violations of 75 Pa.C.S.A. § 5985.1, he waived his third and fourth claims. ***See id.***

Dispositional order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/12/2016