J-S67044-19

2020 PA Super 104

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DERECK MICHAEL MARTZ | : | |
| | : | |
| Appellant | : | No. 1528 MDA 2018 |

Appeal from the Judgment of Sentence Entered March 9, 2018
In the Court of Common Pleas of Montour County Criminal Division at
No(s):  CP-47-CR-0000029-2014

BEFORE:   OLSON, J., DUBOW, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.:                      **FILED APRIL 28, 2020**

Appellant, Dereck Michael Martz, appeals from the judgment of sentence entered in the Court of Common Pleas of Montour County after a jury found him guilty of five sex crimes he committed between the ages of 11 and 17 against a boy five years his junior.  Receiving an aggregate sentence of 12 to 50 years' incarceration, Appellant raises numerous issues for our review.  We affirm.

In this Court's previous disposition of the Commonwealth's interlocutory appeal in this matter, we set forth pertinent facts and pre-trial procedural history of the case, as follows:

> Appellee was born on April 2, 1985. M.S. ("the victim") was born in April of 1990.  On September 23, 2013, M.S., who was then twenty-three years old, reported to Danville Police that he had been sexually abused as a child on an ongoing basis by Appellee,

---

[*] Former Justice specially assigned to the Superior Court.

who was then twenty-eight years old. N.T., 7/30/14, at 3–6, 25. On January 9, 2014, Appellee was charged in criminal court with twelve counts of each of the following crimes: rape of a child, involuntary deviate sexual intercourse with a child, statutory sexual assault, aggravated indecent assault of a child, indecent assault of a person less than thirteen years of age, and one count of terroristic threats, totaling sixty-one charges. At the preliminary hearing on January 27, 2014, the sixty sexual assault counts were held for trial, and the single count of terroristic threats was dismissed.

Appellee filed a Motion for Bill of Particulars on March 12, 2014, seeking identification of the dates, times, and locations of the sexual assaults. Request for Bill of Particulars, 3/12/14. He also filed a Motion for Bill of Particulars or Other Appropriate Relief on March 24, 2014. In that motion, Appellee sought dismissal of the Information due to the alleged insufficiency of its allegations and asserted that the Commonwealth did not adequately specify the dates and circumstances of the charges against him, thereby precluding him from formulating defenses. Motion for Bill of Particulars or Other Appropriate Relief, 3/24/14, at unnumbered 2. On April 3, 2014, Appellee filed an omnibus pretrial motion seeking, *inter alia*, dismissal based on prejudicial delay.

On May 9, 2014, due to Appellee's desire to proceed *pro se*, the trial court held a colloquy pursuant to **Commonwealth v. Grazier**, 552 Pa. 9, 713 A.2d 81 (1998), and Pa.R.Crim.P. 121. In an order dated May 9, 2014, and filed May 22, 2014, the trial court permitted Appellee to proceed *pro se*. Order, 5/22/14, at 1. The trial court also held a hearing on Appellee's other pretrial motions on May 9, 2014, as well as June 9, 2014. On June 27, 2014, the Commonwealth filed an Amended Information containing more specific and detailed allegations. Therein, the assaults were alleged to have begun in 1996 and continued until 2002. The hearing on Appellee's pretrial motions was resumed on July 9, 2014. At the July 9, 2014 hearing, Appellee verbally raised an "infancy defense" in which he sought dismissal of certain counts based on his claim that because he was a child between the ages of eleven and seventeen when the alleged abuse occurred, he lacked capacity to commit the crimes. In an order dated July 15, 2014, and filed July 18, 2014, the trial court scheduled a supplemental hearing on the pretrial motions. That hearing was held on July 30, 2014.

On August 11, 2014, the trial court entered the following order:
AND NOW, to wit, on this 11th day of August, 2014, on the basis
of the reasons set forth in the foregoing Opinion, it is ORDERED
as follows:

1. The Defendant's Motion for Bill of Particulars or
   Other Appropriate Relief is DENIED;

2. The Defendant's oral Motion to Dismiss based upon
   the Infancy Defense is GRANTED IN PART. Counts
   1–9, 13–21, 25–33, 37–45, 49–57 shall be
   dismissed to the extent that they encompass acts
   occurring prior to April 2, 1999 when the Defendant
   reached the age of 14. Those counts shall continue
   to be subject to prosecution in the present case as
   to time periods from and after April 2, 1999; and

3. The Defendant's Motion to Dismiss based upon
   Prejudicial Delay, contained in the Omnibus Motion
   filed on April 3, 2014, is DENIED.

Opinion and Order, 8/11/14, at 9.

In the opinion accompanying the August 11, 2014 order, the trial
court held there is a rebuttable presumption that Appellee did not
have the capacity to appreciate the wrongfulness of his conduct
through the age of fourteen. Opinion and Order, 8/11/14, at 3.5
It found that the Commonwealth had not rebutted that
presumption and, accordingly, dismissed counts based on
allegations of acts occurring prior to April 2, 1999, which was
when Appellee reached the age of fourteen. *Id*.

*Commonwealth v. Martz*, 118 A.3d 1175, 1176-78 (Pa.Super. 2015).

The Commonwealth filed an interlocutory appeal to this Court, which

held, *inter alia*, that the infancy defense applies to criminal prosecutions for

conduct committed before age 14 and is a rebuttable presumption that a

defendant may raise before trial. *Martz*, 118 A.3d at 1183-84. We further

determined, however, that the trial court had not given the Commonwealth

an adequate opportunity to rebut the presumption, and so we remanded the matter for further proceedings consistent with our decision. *Id*. The Commonwealth filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which initially granted the petition before eventually dismissing the appeal as having been improvidently granted.

The case returned to the trial court, which instantly entered an order directing that the Pennsylvania Office of Attorney General assume jurisdiction over the prosecution of the present case. On January 9, 2017, the Office of the Attorney General entered its appearance. Subsequent pre-trial proceedings before the trial court resulted in court orders permitting the Commonwealth to present evidence rebutting Appellant's infancy defense and to file an amended information reducing the number of charges to five.[1]

Trial commenced on December 12, 2017, at the conclusion of which the jury found Appellant guilty on all charges. Informed by a presentence investigation report at the sentencing hearing of February 27, 2018, the trial court imposed standard guideline range sentences of incarceration as follows: 5 ½ to 20 years for Rape of a Child; 5 ½ to 20 years for IDSI, to run consecutive to Count 1; 1 to 10 years for Statutory Sexual Intercourse, to run

_____

[1] The charges were: 1) Rape of a Child, Person Less Than 13 Years of Age; 2) Involuntary Deviate Sexual Intercourse, Person Less Than 13 Years of Age; 3) Statutory Sexual Assault; 4) Aggravated Indecent Assault, Person Less Than 13 Years of Age; and 5) Indecent Assault, Person Less Than 13 Years of Age.

consecutive to Count 1; 3 to 10 years for Aggravated Indecent Assault, to run concurrent to Count 1; and 1 to 2 years for Indecent Assault; to run concurrent to Count 1, for an aggregate sentence of 12 to 50 years' incarceration. On April 13, 2018, the court ordered that Appellant register as a lifetime sex offender pursuant to the current version of Pennsylvania's Sex Offender Registration and Notification Act ("SORNA II"), 42 Pa.C.S. § 9799.10 et seq. This timely appeal followed.

Appellant presents the following questions for our consideration:

1. Did the lower court error [sic] by denying the Appellant's pre-trial motion to dismiss based upon prejudicial delay and the statute of limitations and further erred [sic] because it was a violation of the ex post facto clauses of the United States Constitution, Article I, Section 10 and the Pennsylvania Constitution, Article I, Section 10 and the Pennsylvania Constitution, Article I, Section 17?

2. Did the lower court error [sic] when it denied the Appellant's Motion to Dismiss pursuant to Pa.R.Crim.P. 600?

3. Did the trial court error [sic] in denying the Appellant's motion to dismiss based on a violation of his right to a speedy trial under both the United States and Pennsylvania Constitutions?

4. Did the lower court error [sic] when it denied the Appellant's Motion to Dismiss based upon the Infancy Defense?

5. Did the lower court abuse its discretion by permitting hearsay evidence from a newspaper and to permit hearsay evidence that the Appellant allegedly gave an admission at a preliminary hearing?

6. Did the lower court abuse its discretion by limiting evidence of motive and bias in regards to the Appellant's wife?

7. Did the lower court error [sic] in its sentence by considering evidence before the Appellant's 14th birthday and applying the SORNA lifetime registration requirements?

Appellant's brief, at 5.

Appellant first contends the lower court erred by denying his pre-trial motion to dismiss raising *ex post facto*[2] and prejudicial delay challenges to the application of amended statutes of limitations that took effect after the time of his alleged crimes. Specifically, in the relevant period, two amendments extended the limitations period for sex crimes committed against minors, with the most recent amendment permitting the filing of charges at any time prior to a minor victim's 50th birthday.

Appellant was charged with the above-mentioned sex offenses in connection with his repeated sexual assaults of the minor victim from 1996 through 2002. At that time, the applicable limitations period would have

_____

[2] "The *ex post facto* prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." **Commonwealth v. Rose,** 127 A.3d 794, 798 (Pa. 2015) (citations and internal quotation marks omitted), **cert. denied**, 136 S.Ct. 2379 (2016). The *ex post facto* clause of the Pennsylvania Constitution provides: "No *ex post facto* law, nor any law impairing the obligation of contracts, or making irrevocable any grant of special privileges or immunities, shall be passed." (Pa. Const. Art. 1, § 17). The *ex post facto* clause of the United States Constitution, meanwhile, provides: "No State shall ... pass any Bill of Attainder, *ex post facto* Law, or Law impairing the Obligation of Contracts ...." (U.S. Const. Art. 1, § 10).

expired on April 18, 2013, five years after the victim's 18th birthday. However, on August 27, 2002, well before that expiration date, our legislature amended the limitations statute to provide a 12-year limitations period following a minor victim's 18th birthday. *See* 42 Pa.C.S.A. § 5552 (b.1). As such, this first amendment enacted in 2002 extended the limitations period in the present case to April 18, 2020. As noted above, a subsequent amendment enacted in 2007 and still in effect further extended the limitations period, allowing the filing of charges up to when the minor victim reaches age 50. *See* 42 Pa.C.S.A. § 5552(c)(3).[3]

Appellant claims that applying amendments enacted after he allegedly committed his criminal acts as a juvenile violated his rights under the *ex post facto* clause, because doing so permitted the filing of charges in his adulthood, when he was subject to an increased penalty. Initially, we note there is no factual basis for this argument, for the record reveals that Appellant, who turned 18 years old in 2003, could have been charged in his adulthood well within the limitations period as it existed at the time of his crimes.

Nor can Appellant prevail on his alternate *ex post facto* argument that charges against him were filed on a date that would have been outside the

---

[3] A prosecution for rape, involuntary deviate sexual intercourse, statutory sexual assault, sexual assault, indecent assault, aggravated indecent assault, or indecent exposure, where the victim is a minor under age 18, may be commenced any time before the later of: the period of limitation as calculated from the victim's 18th birthday, or the victim's 50th birthday. 42 Pa.C.S.A.§ 5552(c)(3);

limitations period applicable at the time he allegedly committed his crimes. It is well-settled that "for a criminal or penal law to be deemed an *ex post facto* law, 'two critical elements' must be met: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." ***Commonwealth v. Rose***, 127 A.3d 794, 798 (Pa. 2015).

Appellant fails to meet the requirement of retrospectivity, or retroactivity, cited above, as the Pennsylvania Supreme Court has recognized that "[t]here is nothing 'retroactive' about the application of an extension of a statute of limitations, so long as the original statutory period has not yet expired." ***Commonwealth v. Johnson***, 553 A.2d 897, 900 (Pa. 1989). As no iteration of the Section 5552 limitations period in this case expired prior to the effective date of its successor, Appellant may not prevail on this claim. ***See Commonwealth v. Spanier***, 192 A.3d 141, 147 (Pa.Super. 2018), *appeal denied*, 203 A.3d 199 (Pa.Super. 2019) (holding where the existing statute of limitations had yet to expire at the time of its amendment, the amended statute applies to the prosecution) (citing ***Commonwealth v. Harvey***, 542 A.2d 1027, 1030–31 (Pa.Super. 1988) (*en banc* ).[4]

---

[4] Appellant similarly posits that the timely filing of charges within the amended statute of limitations period violated his due process rights because it is difficult to remember what he was doing fourteen years earlier as a juvenile. ***See*** Appellant's brief, p. 14. As Appellant fails to develop this position with citation to supporting authority, however, we deem this issue waived. Pennsylvania Rule of Appellate Procedure 2119(a) provides that an appellant

In Appellant's second issue, he challenges the trial court's order denying his motion to dismiss pursuant to Pa.R.Crim.P. 600. Our standard of review is as follows:

> This Court reviews a ruling under Rule 600 pursuant to an abuse-of-discretion standard. An abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law. Additionally, when considering a Rule 600 claim, this Court must view the record facts in the light most favorable to the winner of the Rule 600 motion. It is, of course, an appellant's burden to persuade us the trial court erred and relief is due.

*Commonwealth v. Claffey*, 80 A.3d 780, 787 (Pa. Super. 2013) (citations omitted).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

---

shall identify in his argument section the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent. Appellant has failed to develop any argument in support of this position in violation of Pa.R.A.P. 2119(a) and Pa.R.A.P. 2119(b), which requires that "[c]itations of authorities must set forth the principle for which they are cited." Pa.R.A.P. 2119(b). This Court will not become the counsel for an appellant and develop arguments on an appellant's behalf, *Commonwealth v. Gould*, 912 A.2d 869, 873 (Pa.Super.2006). Waiver of an issue results when an appellant fails to develop an issue properly or cite to legal authority to support his contention in his appellate brief. *Commonwealth v. Williams*, 959 A.2d 1252, 1258 (Pa.Super.2008). Accordingly, Appellant has waived this aspect of his issue.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Peterson*, 19 A.3d 1131, 1134–35 (Pa. Super. 2011),

quoting *Commonwealth v. Ramos*, 936 A.2d 1097, 1100 (Pa. Super. 2007).

Rule 600 provides, in relevant part, as follows:

**Rule 600. Prompt Trial**

(A) Commencement of Trial; Time for Trial
...

(2) Trial shall commence within the following time periods.

(a) Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.
...

(C) Computation of Time

(1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.
...

Pa.R.Crim.P. 600.

Generally, Rule 600 requires that a defendant be brought to trial within 365 days of the filing of the criminal complaint. Pa.R.Crim.P. 600(A)(2)(a). However, a defendant is not automatically entitled to discharge under Rule 600 where trial

starts more than 365 days after the filing of the complaint. ***Commonwealth v. Goldman***, 70 A.3d 874, 879 (Pa. Super. 2013). Rather, Rule 600 "provides for dismissal of charges only in cases in which the defendant has not been brought to trial within the term of the adjusted run date, after subtracting all excludable and excusable time." ***Id***. The adjusted run date is calculated by adding to the mechanical run date, i.e., the date 365 days from the complaint, both excludable time and excusable delay. ***Id***. "Excludable time" is classified as periods of delay caused by the defendant. Pa.R.Crim.P. 600(C)(2). "Excusable delay" occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. ***Commonwealth v. Roles***, 116 A.3d 122, 125 (Pa. Super. 2015). "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." ***Commonwealth v. Armstrong***, 74 A.3d 228, 236 (Pa. Super. 2013) (citation omitted). Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600. ***Commonwealth v. Ramos***, 936 A.2d 1097, 1102 (Pa. Super. 2007). Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence. Pa.R.Crim.P. 600(C)(1).

***Commonwealth v. Moore***, 214 A.3d 244, 248–49 (Pa.Super. 2019), *appeal denied*, No. 445 MAL 2019, 2020 WL 547945 (Pa. Feb. 4, 2020).

After review of both the record and Appellant's argument on this issue, we discern no basis for granting relief. Specifically, we would apply Pa.R.A.P. 2119(a) to find waiver for Appellant's failure to develop a meaningful argument with citation to relevant, legal authority on this claim in his appellate brief. ***See Commonwealth v. Heilman***, 867 A.2d 542, 546 (Pa.Super. 2005) (recognizing that failure to include "such discussion and citation of authorities as are deemed pertinent" may result in waiver of claim);

***Commonwealth v. Cornelius***, 856 A.2d 62, 77 (Pa.Super. 2004) (declining to review claim where brief contains limited explanation and development of argument).

Here, Appellant's Rule 600 argument provides neither an accounting of the time delays at issue nor any developed argument or citation to authority to support his bare assertion that the court erroneously calculated excusable and excludable time to the demise of his Rule 600 motion. Instead, his argument consists of nothing more than a reference to the nearly four-year time period between the January 2014 filing of charges and the October 2017 commencement of trial, and a general accusation that the record as it had developed leading up to the motion *in limine* hearing on the eve of trial provided insufficient evidence to support the court's order denying his motion.

> The Rules of Appellate Procedure [at Pa.R.A.P. 2119] state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention. This Court will not act as counsel and will not develop arguments on behalf of an appellant. [M]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter.

***Coulter v. Ramsden***, 94 A.3d 1080, 1088–89 (Pa.Super. 2014) (internal citations and quotation marks omitted). Therefore, we find Appellant has waived this claim for lack of development. ***Umbelina v. Adams***, 34 A.3d 151, 161 (Pa.Super. 2011). ***See also Commonwealth v. Williams***, 732

A.2d 1167, 1175 (Pa. 1999) (noting relief is unavailable based upon undeveloped claims for which insufficient argument is presented on appeal).

Even if Appellant had developed an argument for this issue, the record supports the trial court's acceptance of the Commonwealth's methodical calculation of the adjusted run date. *See* Trial Court Opinion, 7/3/19, at 2-4; Commonwealth's Brief for Appellee, at 14-16. Indeed, the timeline in question comprised significant delays from both Appellant's numerous *pro se* motions requiring the scheduling of hearing dates and the Commonwealth's successful interlocutory appeal to this Court from the trial court's ruling granting Appellant's motion to dismiss based upon the Infancy Defense.[5] Accordingly, we find no error in the trial court's analysis and, therefore, conclude the trial

_____

[5] This Court has held that "'excusable delay' for purposes of Rule [600] review includes delay caused by appellate review of pretrial motions." ***Commonwealth v. Ferri***, 599 A.2d 208, 210 (Pa.Super. 1991) (finding entire four-year delay caused by Commonwealth's appeal was properly excluded after this Court affirmed order severing charges and Supreme Court denied Commonwealth's petition for allowance of appeal); ***Commonwealth v. Coleman***, 491 A.2d 200, 201-02 (Pa.Super. 1985) (finding Commonwealth's unsuccessful two-year interlocutory appeal to the Supreme Court of Pennsylvania tolled the speedy trial rule time, when such appeal was taken for tactical reasons and not for delay). Notably, such holdings applied even though the Commonwealth's appeals were unsuccessful. The touchstone inquiry in deciding whether time taken to seek interlocutory appellate review for pretrial motions counts toward the 365-day calculation turns on whether the Commonwealth acted in bad faith in taking the appeal. ***See Commonwealth v. Matis***, 710 A.2d 12, 17-19 (Pa. 1998) (holding, "Thus, despite the fact that this Court had quashed the Commonwealth's interlocutory appeal, there was no evidence of bad faith on the part of the Commonwealth in filing that interlocutory appeal, so the Commonwealth did not "fail[] to exercise due diligence pursuant to Rule [600].").

- 13 -

court did not abuse its discretion in determining that Appellant's trial started before the adjusted run date.

Next, Appellant argues the trial court erred in denying his motion to dismiss based on his constitutional right to a speedy trial. "In evaluating speedy trial issues, our standard of review is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party." *Commonwealth v. Miskovitch*, 64 A.3d 672, 677 (Pa. Super. 2013) (citation and quotation marks omitted). Speedy trial analysis requires a two-step inquiry: "we first consider whether the delay violated Pa.R.Crim.P. 600, and if not, we may proceed to the four-part constitutional analysis set forth in *Barker* [*v. Wingo*, 407 U.S. 514 (1972)]." *Commonwealth v. Colon*, 87 A.3d 352, 357 (Pa. Super. 2014). As we have conducted a Rule 600 inquiry and discerned no violation of Appellant's rights, we proceed to Appellant's discreet constitutional claim, which he raised and preserved in a pretrial motion with the trial court.

In *Commonwealth v. Hamilton*, 297 A.2d 127, 130-33 (Pa. 1972), the Pennsylvania Supreme Court deemed the *Barker* balancing test inadequate to ensure a defendant's right to a speedy trial under the Pennsylvania Constitution. The Court has also suggested that "the prompt trial rule [*i.e.*, Rule 600] ... represents the sole means of securing a defendant's state constitutional right to a speedy trial." *Commonwealth v. Meadius*, 870 A.2d 802, 803 n.1 (Pa. 2005) (citing *Commonwealth v.*

**Whitaker**, 359 A.2d 174, 176 (Pa. 1976). The Court has continued to apply the balancing test in cases where an appellant presents independent claims premised on both the procedural rule and the constitutional guarantees. **Commonwealth v. DeBlase**, 665 A.2d 427, 431 (Pa. 1995).

Here, Appellant claims the 15-year period that transpired from when his alleged crimes occurred to when the victim first reported the crime and charges were filed violated his constitutional right to a speedy trial under the state and federal constitutions. Appellant, however, misconstrues the constitutional right to a speedy trial, as that right pertains to the time after the filing of charges. To this point, the Pennsylvania Supreme Court has explained:

> The right to a speedy, public trial is "one of the most basic rights preserved by our Constitution." **Klopfer v. North Carolina**, 386 U.S. 213, 226, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). Because the exercise of the government's power to detain an individual pending a criminal prosecution places a heavy burden upon the accused, the speedy trial guarantee "is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself." **United States v. Ewell**, 383 U.S. 116, 120, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966). For a person subject to pre-trial incarceration:
>
>> The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been

- 15 -

convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent.

*Barker*, 407 U.S. at 532-33, 92 S.Ct. 2182. Moreover, even for an individual who secures his release on bail and will await trial outside of a jail cell, the foreboding promise of an impending prosecution is a heavy weight to carry. "[E]ven if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Id.* at 533, 92 S.Ct. 2182. Because the power to deprive one of his liberty is of such consequence, and because the attendant disturbance to one's life is so momentous, the right to a speedy, public trial is a core component of the procedural rights afforded to the accused under the Constitution, "as fundamental as any of the rights secured by the Sixth Amendment." *Klopfer*, 386 U.S. at 223, 87 S.Ct. 988.

*Commonwealth v. Barbour*, 189 A.3d 944, 954–55 (Pa. 2018).

As such, Appellant's reliance on *Commonwealth v. Dallenbach*, 729 A.2d 1218 (Pa.Super. 1999) is misplaced. In *Dallenbach*, this Court held that repeated continuances by the trial court and Commonwealth, resulting in an 18-month delay between the arrest of a juvenile and his adjudicatory hearing, violated the juvenile's Sixth Amendment speedy trial rights. 729 A.2d at 1220-1222. *Dallenbach* is thus distinguishable, as it involved post-arrest delay caused by court and state action. In contrast, the delay complained of in the case *sub judice* stemmed not from state action but from the time taken by the victim to bring his accusations to authorities.

Moreover, to the extent Appellant seizes upon the passage in *Dallenbach* stating, "the concept of 'fundamental fairness' in juvenile proceedings would seem to require that at least some limit be placed on the length of time between the delinquent act and the case disposition, including

- 16 -

any associated punishment[,]" 729 A.2d at 1220, that passage must be read within the factual context of **Dallenbach**, which involved an immediate arrest followed by post-arrest delay. **See**, **e.g.**, **Sci. Games Int'l, Inc. v. Com.**, 66 A.3d 740, 753 (Pa. 2013) (citing **Oliver v. City of Pittsburgh**, 11 A.3d 960, 966 (Pa. 2011) (reiterating the axiom that judicial holdings are to be understood in light of their factual underpinnings). Indeed, the ensuing paragraphs in the opinion develop the theme of the passage by discussing only pertinent statutory authority on a juvenile's right to a speedy adjudicatory hearing after the filing of a juvenile petition, and constitutional jurisprudence on speedy trial rights, all of which implicate the post-arrest phase. 729 A.2d at 1220-1222. Accordingly, we cannot agree with Appellant that **Dallenbach** expands speedy trial rights in the juvenile setting to require inquiry into a minor victim's pre-arrest delay in reporting a sex crime.

Appellant contends next that the trial court erred by denying his motion to dismiss the case based on an infancy defense, as he claims the Commonwealth failed to present sufficient rebuttal evidence to the defense. Pennsylvania has traditionally adhered to the common law rule, as follows:

> In Pennsylvania we have followed the common-law rule in measuring the capacity of a child to commit a crime. A child under the age of 7 years is conclusively presumed incapable of the commission of a crime; a child between the ages of 7 and 14 years is likewise presumed incapable of committing a crime but such presumption is subject to refutation by evidence that the child does possess the criminal capacity; a child over the age of 14 years is prima facie capable of the commission of a crime.

- 17 -

*Commonwealth v. Green*, 396 Pa. 137, 151 A.2d 241, 246 (1959). Thus, "any special immunity or presumption of incapacity ceases" when the child reaches fourteen. *Commonwealth v. Cavalier*, 284 Pa. 311, 131 A. 229, 234 (1925).

. . .

This Court has discussed capacity, as that term is understood in relation to the infancy defense, as follows:

> Capacity, in terms of the infancy defense, refers, not to the ability to formulate *mens rea*, ... but to the ability to appreciate the criminality and wrongfulness of one's acts. *See* F. McCarthy, The Role of the Concept of Responsibility in Juvenile Delinquency Proceedings, 10 University of Michigan Journal of Law Reform 181, 183–185 (1977). It is this capacity, and not the ability to formulate the necessary intention, that is the subject of the common law presumptions regarding children.

*Interest of G.T.*, 597 A.2d at 640 (emphasis added). We have previously held that the infancy defense remains a presumption in criminal proceedings, although "such presumption is subject to refutation...." *Green*, 151 A.2d at 246.
. . .

In summary, the common law defense of infancy is applicable to the charges against Appellee until the time he turned fourteen years old. However, it applies as a rebuttable presumption between the ages of seven and fourteen. After careful review of the certified record in this case, we conclude that the Commonwealth was not given an adequate opportunity to present rebuttal evidence, no doubt due in part to the convoluted nature of the proceedings and Appellee's pro se status.

As noted *supra*, criminal responsibility is generally dependent upon three factors: 1) proximity of age to either infancy or puberty, 2) the nature of the offense, and 3) the mental capacity of the offender*. In re Tyvonne*, 558 A.2d at 663. Relevant evidence of capacity goes to an appreciation of the wrongfulness of the conduct and may consist of*, inter alia*, prior experience with the juvenile or criminal systems at the time of the offenses and

attempts to conceal the alleged conduct.

Although we recognize the difficulty of producing such evidence many years after the alleged conduct, the Commonwealth should have been given a full and fair opportunity to produce such rebuttal evidence. In not doing so, the trial court erred.

***Commonwealth. v. Martz***, 118 A.3d 1175, 1183 (Pa.Super. 2015).

According to Appellant, the Commonwealth failed to present any rebuttal evidence that related to when he was 10 or 11 years old, or that showed either his attempt to conceal the alleged conduct or his mental capacity to commit crimes of a sexual nature. The record belies his contention.

The Commonwealth produced evidence establishing the criminal conduct was continuous from age 10 through 13, ages much closer to puberty than to infancy, and consistently occurred in secluded locations such as under a porch, in the woods, and inside tunnels of a children's playground in a local park. These two features—an age approaching puberty and choice of secluded areas—showed Appellant's appreciation of the wrongfulness and criminality of his acts. The lack of eyewitnesses to any of the numerous acts over the years, moreover, provided further evidence of Appellant's understanding that his conduct was wrong and required careful selection of secluded locations.

The Commonwealth also offered rebuttal evidence regarding Appellant's adjudication of delinquency for Arson at age 12. The evidence from the juvenile hearing in that case showed Appellant had called 911 to report the shed fire and initially denied responsibility. Eventually, however, he admitted he started the fire with matches and lighter fluid. Such conduct on Appellant's

part, according to the Commonwealth, showed not only the sophistication to call 911 to divert suspicion but also the appreciation of wrongful or criminal behavior by thereafter denying any involvement during the official investigation. It follows, the Commonwealth argued, that Appellant also appreciated the criminality of sexually abusing the victim, M.S., who was then just seven years old.

Additional rebuttal evidence at trial consisted of Appellant's adjudication of delinquency at age 13 for assaulting a ten-year old boy with taunts, threats of harm, and holding a knife to the boy's shirt. Evidence from that case showed Appellant denied accusations offered by both the victim and Appellant's friend, who was an eyewitness to the event. Appellant also had given a pseudonym to the victim at the time and lied to the police about his involvement, which showed an appreciation of the wrongfulness of his actions.

Finally, the Commonwealth introduced evidence that Appellant threatened to harm the victim if he told anyone about Appellant's sex acts against him as additional proof that he knew secrecy was vital because his conduct was wrong.

Despite this record, Appellant argues this Court's decision in *In re B.A.M*., 806 A.2d 893 (Pa. Super. 2002) controls the instant matter. *B.A.M.* involved two eleven-year-old boys, B.A.M. and J., who entered the woods on their bikes one afternoon and had sex, with each performing anal sex on one another. Later that day, J. told his grandmother that B.A.M. had forced him to participate in the sexual activity, and she called authorities, who

- 20 -

investigated the complaint. *Id*. Ultimately, the Commonwealth filed a delinquency petition against only B.A.M.

The juvenile court adjudicated B.A.M. delinquent for acts constituting rape (victim under 13) and involuntary deviate sexual intercourse (IDSI) (victim under 13), but dismissed allegations regarding forcible compulsion and lack of consent. *Id*. B.A.M. appealed, contending, "an 11–year–old boy [should not be held] criminally responsible for having consensual sexual relations with another 11–year–old boy." *Id*.

On appeal, this Court reversed B.A.M.'s adjudication. Discerning in governing statutory authority a legislative intent to protect children from older predators, we concluded there is "no legitimate interest in prosecuting consensual activity between two children under 13. Any contrary conclusion would lead only to absurdity." *Id*. However, while we suggested that sexual activity between peers is not necessarily a crime, we reasoned that the same behavior becomes criminal when the ages of the participants are "significantly disparate and/or the acts were not mutually agreed upon." *Id*.

This Court has limited *B.A.M.* to its particular facts. In *In re C.R.*, 113 A.3d 328 (Pa.Super. 2015), a twelve-year-old juvenile relied on *B.A.M.* to claim that he could not be adjudicated delinquent for sexual acts because he was under thirteen years of age. We rejected the juvenile's argument, noting that *B.A.M.* did "not hold that a 13–year–old cannot be held criminally liable for initiating sexual activity; rather, it held that one child could not be held criminally liable for the acts of two 11–year–olds who consensually engaged

in the conduct." Id. at 334 (emphasis in original). We thus distinguished **B.A.M.** as involving actions shown to be consensual.

Additionally, this Court stressed the limited nature of **B.A.M**.'s holding, explaining that "[w]ere we to have worded our holding in **B.A.M.** more precisely, we would have strictly limited the holding to its facts wherein mutually agreed upon sexual activity between peers under the age of 13 is not a crime." **Id**. at 335 (citation omitted).

For the same reasons expressed in **In re C.R.**, we reject Appellant's reliance on **B.A.M.** in the case *sub judice*. First, the instant case does not involve peers, as Appellant was five years older than the victim, who was just five years old when the four-year course of abuse commenced. Second, the record supports the finding that Appellant committed the sexual acts without the victim's consent. Lastly, to Appellant's argument that **B.A.M.** stood for the proposition that being under age 13 relieved the juvenile of liability, **see** Appellant's brief at 29, we note that so reading **B.A.M.** would effectively absolve individuals under the age of thirteen from criminal liability in any sex case. **See In re C.R**., 113 A.3d at 335, *supra*. Accordingly, this claim has no merit.

In Appellant's sixth issue, he avers the lower court abused its discretion when it ruled he could not introduce evidence that his wife, prior to their marriage, had dated the victim in 2016 and made two separate sexual assault accusations against the victim in April and August of 2016. Authorities,

however, determined the episodes were consensual and filed no charges against the victim.

Appellant nevertheless argued that the evidence was properly admissible to show the victim's bias and his motivation to fabricate the allegations he raised against Appellant. The trial court addressed this issue first in granting the Commonwealth's motion *in limine* to preclude such evidence as inadmissible under the Rape Shield Law, and again at trial when it sustained a Commonwealth objection when defense counsel asked Ms. Auker during direct examination whether she dated the victim in 2016.

This Court has established that a trial court's ruling on the admissibility of a sexual abuse victim's prior sexual conduct will be reversed only where there has been a clear abuse of discretion. ***Commonwealth v. K.S.F.***, 102 A.3d 480, 483 (Pa.Super. 2014). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused." ***Id***. (citation and quotation omitted).

The Rape Shield Law provides, in pertinent part, as follows:

> Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

- 23 -

18 Pa.C.S. § 3104(a).

This Court has recently observed:

The purpose of the Rape Shield Law is "to prevent a trial from shifting its focus from the culpability of the accused toward the virtue and chastity of the victim." ***Commonwealth v. Burns***, 988 A.2d 684, 689 (Pa.Super. 2009) (citation omitted). Moreover, "[t]he Rape Shield Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants." ***Id. See also Commonwealth v. Largaespada***, 184 A.3d 1002, 1006 (Pa.Super. 2018), *appeal denied*, ––– Pa. ––––, 197 A.3d 223 (2018).

"[P]rior sexual conduct with third persons is ordinarily inadmissible to attack the character of the [complainant] in sex offense cases. 1A Wigmore, Evidence § 62 (Tillers rev. 1983)." ***Commonwealth v. Black***, 337 Pa.Super. 548, 487 A.2d 396, 398 (1985) ***see also Commonwealth v. Fink***, 791 A.2d 1235, 1241-42 (Pa.Super. 2002). Notwithstanding, where "the evidence of prior sexual conduct was not offered merely to show any general moral turpitude or defect of the [complainant], but rather to reveal a specific bias against and hostility toward appellant and a motive to seek retribution by, perhaps, false accusation[,]" the evidence may be admissible. ***Black***, at 398-399.

In addition, the Rape Shield Law applies to sexual activity that occurred before trial regardless of whether it was before or after the alleged sexual assault. ***See Commonwealth v. Jones***, 826 A.2d 900, 908-909 (Pa.Super. 2003) ("[The Pennsylvania Supreme Court has explained that the specific purpose of the Pennsylvania Rape Shield Law is to prevent a sexual assault trial from degenerating into an attack upon the collateral issue of the complainant's reputation rather than focusing on the relevant legal issues and the question of whether the events alleged by the complainant against the defendant actually occurred. This purpose is not fostered by limiting application of our Rape Shield Law to sexual conduct that occurred before the incident giving rise to criminal charges but allowing a defendant to besmirch a complainant with accusation and innuendo based on her conduct after an alleged rape.").

***In K.S.F.***, this Court further explained:

> Although the literal language of the Rape Shield Law would appear to bar a wide range of evidence, courts have interpreted the statute to yield to certain constitutional considerations implicating the rights of the accused. **See**, **e.g.**, **Commonwealth v. Riley**, 434 Pa. Super. 414, 643 A.2d 1090, 1093 (Pa. Super. 1994) (right to cross-examine witnesses).

> Evidence that tends to impeach a witness' credibility is not necessarily inadmissible because of the Rape Shield Law. [ ]**Black**, 487 A.2d [at] 401. When determining the admissibility of evidence that the Rape Shield Law may bar, trial courts hold an *in camera* hearing and conduct a balancing test consisting of the following factors: "(1) whether the proposed evidence is relevant to show bias or motive or to attack credibility; (2) whether the probative value of the evidence outweighs its prejudicial effect; and (3) whether there are alternative means of proving bias or motive or to challenge credibility." **Id**.

> **K.S.F.**, 102 A.3d at 483-484. As such, evidence of a claimant's sexual history may be admissible if "the evidence is relevant to exculpate the accused, more probative than prejudicial, and non-cumulative in nature." **Commonwealth v. Guy**, 454 Pa.Super. 582, 686 A.2d 397, 401 (1996), *appeal denied*, 548 Pa. 645, 695 A.2d 784 (Pa. 1997).

**Commonwealth v. Jerdon**, --- A.3d ----, 2019 PA Super 202 (July 1, 2019), reargument denied (Aug. 22, 2019).

In the instant matter, there is no indication that the victim, M.S., had a relationship with Ms. Auker at the time he reported his sexual abuse allegations against Appellant to authorities in 2013. Therefore, his alleged relationship with Ms. Auker three years later in 2016 was irrelevant to the issue of whether he harbored a motive to fabricate his initial allegations. Nor does Appellant claim the victim's subsequent statements, including those at trial, diverged from his original allegations.

As Appellant fails to demonstrate that the evidence was in any way relevant or probative to the question of the victim's bias and motive to lie when he made his allegations against Appellant, we find that questioning the victim about the nature of his relationship with Ms. Auker would have accomplished nothing other than shifting the jury's focus from the culpability of Appellant to the sexual history of the victim, in violation of the Rape Shield Law. Accordingly, discerning no error with the trial court's evidentiary rulings, we find Appellant's claim offers him no relief.

In his final issue, Appellant raises two distinct challenges to the legality of his sentence. We review the legality of a sentence *de novo*, and our scope of review is plenary. ***Commonwealth v. Strafford***, 194 A.3d 168, 172 (Pa. Super. 2018).

First, Appellant argues that his aggregate sentence of standard range sentences, amounting to a 12 to 50 year sentence, for acts that occurred before his 14th birthday violates both the due process clause and the *ex post facto* clause of the United States and Pennsylvania Constitutions. In support of his contention, Appellant simply directs our attention to the infancy defense and statute of limitations arguments he raised in earlier issues—arguments we have already determined lack merit—without developing these positions any further. We, therefore, find this argument unavailing.

In his second legality of sentence claim, Appellant baldly asserts that his lifetime registration under SORNA II[6] constitutes cruel and unusual punishment, as he states "[i]t is unconscionable that a sentence for an Appellant who was under the age of 14 could have lifetime consequences." Appellant's brief, at 38-39.

This Court, however, has held that a defendant waives his constitutional challenges to SORNA II where "he fails to provide any discussion, whatsoever, concerning the alterations made by the General Assembly in crafting SORNA II in response to ***Muniz***[7] and ***Butler***[8]." ***Commonwealth v. Cosby***, --- A.3d ----, 2019 PA Super 354, at 45 (Pa.Super. 2019) (holding failure to discuss alterations in SORNA II made in response to ***Muniz*** and ***Butler*** resulted in waiver of claim under Pa.R.A.P. 2119(a), as such discussion is

---

[6] Appellant's sentencing hearing took place on April 13, 2018, at which time Act 10 of 2018, which became effective on February 21, 2018, had taken effect.

[7] ***Commonwealth v. Muniz***, 164 A.3d 1189 (Pa. 2017) (holding registration requirements under Pennsylvania's Sex Offender Registration and Notification Act (SORNA) constitute criminal punishment and retroactive application is *ex post facto* violation).

[8] ***Commonwealth v. Butler***, 173 A.3d 1212 (Pa.Super. 2017) (holding SVP determination process utilized under Pennsylvania's Sexual Offender Registration and Notification Act ("SORNA I") unconstitutional). Although ***Butler*** does not pertain to the present issue, we note that on March 26, 2020, the Pennsylvania Supreme Court reversed this Court with its decision in ***Commonwealth v. Butler***, --- A.3d ----, 2020 WL 1466299 (Pa. March 26, 2020), which held SORNA's RNC requirements applicable to SVPs do not constitute criminal punishment, thus obviating the need to prove SVP status beyond a reasonable doubt in accordance with principles set forth in ***Apprendi*** or ***Alleyne***.

"critical to any pertinent analysis of whether SORNA II's SVP provisions were punitive and, thus, subject to state and federal prohibitions of *ex post facto* laws."). ***Id***.

Here, Appellant does not acknowledge any material statutory change effected by SORNA II, nor does he address specifically the constitutionality of SORNA II. Indeed, in this respect, Appellant's brief provides no discussion of whether SORNA II is punitive under the seven-factor constitutionality test set forth by the United States Supreme Court in ***Kennedy v. Mendoza-Martinez***, 372 U.S. 144 (1963). Accordingly, he has waived this claim for lack of development and discussion. ***See also*** Pa.R.A.P. 2119.

For the foregoing reasons, we affirm judgment of sentence.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 04/28/2020