**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTONIO JUAN RIVERA | : | |
| | : | |
| Appellant | : | No. 2018 MDA 2019 |

Appeal from the Judgment of Sentence Entered August 2, 2019
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0003002-2018

BEFORE: SHOGAN, J., STABILE, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED: JANUARY 4, 2021**

Antonio Juan Rivera (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of criminal conspiracy – to commit possession with intent to deliver a controlled substance (PWID).[1] We affirm.

The trial court summarized the facts and procedural history as follows:

> In April 2018, Detective Michael Vance [(Detective Vance)] of the Lancaster County Drug Task Force received information from a confidential informant ("CI") about a large-scale movement of heroin from New York and New Jersey to Lancaster County. The CI explained that on April 29, 2018, a woman, Xiomara Figueroa [(Figueroa)], would be driving to New Jersey to pick up a large quantity of heroin. The CI informed Detective Vance of the make, model, color, and [license] plate number of the vehicle [Figueroa] would be driving. Although Detective Vance was told the date of the trip, he did not know the route or time of the trip[;] surveillance cars were placed at multiple locations along the most logical routes to and from New Jersey.

---

[1] *See* 18 Pa.C.S.A. § 903; 35 P.S. § 780-113(a)(30).

On April 30, 2018 at around 2:00 [a.m.], Detective Vance spotted the wanted vehicle with two occupants stopped at a gas station in Berks County. By pure coincidence, Ms. Figueroa and her sister, Kiomara Figueroa [(Kiomara)], had stopped to grab something to eat at the exact same intersection that Detective Vance himself had chosen for his surveillance. Detective Vance [eventually conducted a stop and investigatory detention of the vehicle's occupants.] … Detective Vance's partner, Detective Anthony Lombardo, used K-9 Officer Bear to sniff the vehicle[,] which revealed a positive hit. Detective Vance proceeded to search the vehicle and found a white bag in the back seat of the car[,] which contained 5,000 bags of heroin [mixed with fentanyl]. Ms. Figueroa and [Kiomara] were then taken back to the police station for questioning.

During the interview, Ms. Figueroa stated she was traveling back from New Jersey after "picking up something" for [Appellant]. [Figueroa stated that Appellant] … sent [] Figueroa to New Jersey in a rental car. The car was rented by [Appellant's] girlfriend, Haydee Gomez. [**Appellant's**] **cousin, Genol Torres** [(**Torres**),] **also known as "Bossy," brought the car to Ms. Figueroa**. Detective Vance knew [] Torres as a drug dealer because the Lancaster Drug Task Force had previously participated in the prosecution of [] Torres for drug dealing prior to the incident at hand.

Ms. Figueroa received the address of the New Jersey destination through a text message from [Appellant,] and she was instructed to return the car to the Turkey Hill in Landisville. Ms. Figueroa said she was not free to diverge from her given travel path and had received strict instructions from [Appellant] to maintain her speed, not smoke in the car, or do anything else that would cause suspicion on her trip. [Appellant] kept tabs on her through multiple text messages and phone calls throughout the trip.

As part of this arrangement, Ms. Figueroa was also given spending money for the trip in the amount of $200 to $300. She was told there was a black bag in the glove box [of the rental car,] and that it was to be exchanged for a white bag in New Jersey. As was the usual arrangement, once [Figueroa] arrived at the address in New Jersey, a man unfamiliar to Ms. Figueroa came out to the vehicle, grabbed the black bag in the glove box and placed a white bag in the backseat of the vehicle. Ms. Figueroa did not

know the contents of the bag, but she had a suspicion it was drugs. As the field test and subsequent lab report showed, the white bag contained approximately 120 grams of heroin and fentanyl.

As the traffic stop was taking place, Ms. Figueroa texted [Appellant] to let him know she had been pulled over in the rental car. After "back to back to back to back" text messages from [Appellant], he eventually called her while she was being interviewed by Detective Vance at the police station. Detective Vance had Ms. Figueroa answer the phone call from [Appellant]. [Appellant] asked Ms. Figueroa, "Did they grab everything?" to which Ms. Figueroa responded, "Everything." At which point [Appellant] hung up abruptly.

At the time of these events, [Appellant] was on federal parole for conspiracy to defraud the United States government by selling, importing or manufacturing defaced firearms. On May 2, 2018, [Appellant] was visited by Federal Parole Agent Damien Mscisz [(Agent Mscisz)] at [Appellant's] home in Landisville. During this visit, Agent Mscisz observed a number of [cellular] phones with [Appellant,] and [Appellant] confirmed they were all his. At Agent Mscisz's request, [Appellant] unlocked one phone [that] was on his person and handed it to Agent Mscisz. Agent Mscisz looked through the phone and noted seeing "owe sheets" in the phone's "Notes" application.[FN] Another Agent aiding in the visit brought to Agent Mscisz's attention a large amount of cash, which prompted Agent Mscisz to contact the Drug Task Force and Detective Vance.

[FN] IOU or owe sheets are a ledger between drug dealers to track debts.

As a result of the information gathered about [Appellant], [he] was arrested and … charged with [] one count of [PWID]; and [] one count of conspiracy to [commit PWID]. Attorney Michael Marinaro [(defense counsel)] entered his appearance on June 8, 2018, the date of [Appellant's] arraignment. …

On September 19, 2018, [Appellant] filed an omnibus pre-trial motion [(OPT Motion),] alleging [claims not pertinent to the instant appeal]…. On February 11, 2019, a hearing was held on the [OPT] Motion[; the trial court granted relief on Appellant's

- 3 -

suppression of evidence claim, and] denied all other claims. A trial date was then scheduled for May 22, 2019.

Prior to the trial, both parties submitted additional motions. On May 10, 2019, [Appellant] filed a *pro se* Rule 600 Motion [] (hereinafter "Rule 600 Motion"). The motion alleged [that Appellant] was being denied his right to a speedy trial. [Defense counsel] never submitted a formal Rule 600 motion on behalf of [Appellant,] and no action was taken on [the Rule 600] Motion prior to trial.

On May 17, 2019, the Commonwealth filed a notice of intent under Rule of Evidence 404(b) [(Rule 404(b) Motion)], which outlined their proposed evidence [regarding Appellant's] prior bad acts as it related to the history of the case. Immediately preceding *voir dire*, [the trial court] ruled on the Motion and granted it only insofar as to allow Ms. Figueroa to testify that she had [previously] made similar transactions like the one at issue.

The trial commenced as scheduled on May 22, 2019. During its case in chief, the Commonwealth presented two expert witnesses. Detective Vance was qualified without objection as an expert in the packaging and distribution of heroin in Lancaster County to testify about this specific investigation. Detective Adam Weber [(Detective Weber)] was qualified, also without objection, as an expert in drug packaging and distribution in Lancaster County to testify about the methods used when performing drug investigations in general. Part of Detective Vance's testimony was to educate the jury about his familiarity with [Appellant] and others involved in the drug trade related to [] Torres. Detective Weber's testimony was [offered] to educate the jury on what constructive possession could look like in these drug transactions. The parties also made several stipulations, one of which was that the State Police lab report determined that the narcotics found in Ms. Figueroa's car was approximately 120 grams of heroin with fentanyl [(the weight stipulation)].

After a three-day trial,[2] the jury began its deliberations. On the verdict slip, the [PWID] count contained a range of weights that [Appellant] could be found guilty of possessing. The conspiracy charge did not list out those weight options. Ultimately, [Appellant] was found not guilty of the [PWID] charge but guilty of conspiracy.

Trial Court Opinion, 3/12/20, at 1-6 (unnumbered) (emphasis and one footnote added; some citations, footnotes and capitalization omitted).

On August 2, 2019, the trial court sentenced Appellant to serve 6 to 30 years in prison. Appellant filed a timely post-sentence motion, which was eventually denied by operation of law. *See* Pa.R.Crim.P. 720(B)(3). Appellant then timely filed a notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant presents six issues for our review:

1. Whether the court abused its discretion by allowing Detective Vance to testify that [Appellant] was a drug associate of [] Torres?

2. Whether the court abused its discretion by precluding [Appellant] from offering testimony from [] Torres[,] which was both exculpatory and contrary to evidence presented by the Commonwealth[,] thereby depriving [Appellant] of due process and the right to present a complete defense?

3. Whether the court should have addressed the merits of [Appellant's] speedy trial motion because trial commenced after the mechanical run date?

_____

[2] On the third day of trial, defense counsel, for the first time, requested the court to allow Appellant to call Torres in Appellant's case-in-chief, even though defense counsel had not subpoenaed Torres or listed him as a witness. The trial court denied this request.

4. Whether the court abused its discretion by permitting the Commonwealth to offer prior bad acts evidence?

5. Whether the court erroneously permitted the Commonwealth's narcotics expert to opine that [Appellant] constructively possessed the heroin at issue?

6. Whether the court abused its discretion by assigning an [offense gravity score] of 11 to the conspiracy charge because [Appellant] was acquitted of PWID and the verdict sheet did not allow for the jury to find any quantity of controlled substance in connection with the conspiracy?

Appellant's Brief at 10 (issues renumbered, some capitalization omitted).[3]

Appellant first argues that the Commonwealth elicited improper testimony from Detective Vance that Appellant and Torres were known drug associates. *See id.* at 10, 29-30, 49-51; *see also* N.T., 5/23/19, at 213-15. According to Appellant, Torres was improperly "injected into the case by the Commonwealth," over the defense's timely objection and motion for a mistrial. Appellant's Brief at 29.

_____

[3] Regarding Appellant's first issue, he does not provide a corresponding discussion of this issue under a separate heading in his brief's argument section. *See* Pa.R.A.P. 2119(a) (requiring the appellant to divide the argument section into separate sections for each issue set forth in the statement of questions presented, with distinctive headings for each such section). Rather, he sporadically addresses the matter in connection with portions of his second and fifth issues. *See* Appellant's Brief at 29-30, 49-51. Though we could deem this issue waived, we will overlook the defect, but caution counsel in the future. *See Commonwealth v. Levy*, 83 A.3d 457, 461 n.2 (Pa. Super. 2013) (declining to find waiver where omissions did not impede review, and citing Pa.R.A.P. 105(a) (providing that appellate rules shall be liberally construed to secure the just, speedy and inexpensive determination of every matter)).

"Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion." ***Commonwealth v. LeClair***, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Antidormi***, 84 A.3d 736, 750 (Pa. Super. 2014) (citations omitted). Moreover, to "constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Commonwealth v. Lively***, 231 A.3d 1003, 1008 (Pa. Super. 2020) (citation omitted). Finally, we also review the denial of a mistrial request for an abuse of discretion. ***Commonwealth v. Radecki***, 180 A.3d 441, 457 (Pa. Super. 2018); ***see also id.*** (a mistrial "is an extreme remedy that must be granted only when an incident is of such a nature that its unavoidable effect is to deprive defendant of a fair trial.").

In support of his claim that the prosecution injected Torres into the case, Appellant contends that, on direct examination, "Figueroa testified that Torres provided the [rental] vehicle in question." Appellant's Brief at 29 (footnote omitted).

The record reveals that the prosecutor asked Figueroa on direct who provided her with the rental car; Figueroa replied: "[Appellant's] cousin brought it to me." N.T., 5/22/19, at 58; **see also id.** at 82 (same). Figueroa did not name this cousin. Further, nowhere prior to this testimony was Torres named,[4] nor was there any discussion concerning Appellant's cousin. In the prosecutor's opening statement, he never mentioned Torres; nor did he implicate any other party as being involved in the crime. **See**, **e.g.**, N.T., 5/22/19, at 40 (prosecutor stating that "[Appellant] provided [Figueroa] with a rental car. . . . He provided her an address in New Jersey that she was to go to in that rental car."); **cf. id.** at 44 (defense counsel asserting in his opening statement that the rental car "was not rented by my client").

On cross-examination of Figueroa, Appellant's counsel inquired about Appellant's cousin in question, using the nickname by which Figueroa knew Torres, *i.e.*, "Bossy":

Q. [Defense counsel]: My client has a lot of cousins, doesn't he?

A. [Figueroa]: I am not sure.

* * *

Q. Do you know a person named Bossy?

A. No, not personally.

Q. But you heard of him?

A. Yes.

---

[4] Figueroa was the first witness to testify at trial.

- 8 -

Q. Who is he?

A. [Appellant's] cousin.

*Id.* at 100-01; *see also id.* at 88-89 (Figueroa stating on cross-examination that she knew Appellant's cousin as Bossy, and Bossy provided her with the rental car).

On re-direct of Figueroa, the prosecutor responded to defense counsel's questioning concerning Bossy. *See id.* at 114-15. Figueroa testified that she did not receive any communications from Bossy after he gave her the rental car. *Id.* at 114. Figueroa further stated that Appellant, not Bossy, gave her the address of the drug house in New Jersey, as well as all other instructions. *Id.* at 115.

On the next day of trial, **defense counsel**: (a) first brought up Torres by name during cross-examination of Detective Vance;[5] and (b) elicited testimony, **for the first time**, that Torres was a drug dealer:

Q. [Defense counsel]: And there was an individual that was communicating with [Figueroa] during this time span with text messages and his name is Bossy. Do you know who that is?

A. [Detective Vance]: Yes, I do.

Q. **You do, Genol Torres**. . . .

* * *

Q. **Bossy is a drug dealer**?

_____

[5] Notably, the prosecutor never mentioned Bossy/Torres on direct examination of Detective Vance.

- 9 -

A. Yes, he is.

Q. Who is he?

A. [Appellant's] cousin.

N.T., 5/23/19, at 197 (emphasis added); *see also id.* at 199, 202 (defense counsel inquiring whether Torres, not Appellant, could have been the person who arranged the drug deal in question).

On redirect of Detective Vance, the prosecutor responded to defense counsel's above line of questioning, by inquiring about Bossy and his relationship with Appellant:

Q. And lastly, do you know Bossy?

A. Yes.

Q. What is Bossy's full name?

A. Genol Torres.

Q. Is Mr. Torres related to [Appellant]?

A. Yes.

Q. How is he related to [Appellant]?

A. Cousins.

Q. Defense counsel also asked you if Bossy is a drug dealer.

A. Yes.

Q. Do you know who his associates are in the drug dealing world?

A. Yes.

Q. Who are they?

A. Antonio Rivera.

*Id.* at 213. Defense counsel then immediately objected and moved for a mistrial based on this exchange. *See id.* at 213-15.

Taken **in isolation**, the prosecutor's question to Detective Vance concerning the identity of Bossy's "associates [] in the drug dealing world" is inappropriate. However, reading the record **as a whole**, the prosecutor's question was in fair response to the testimony elicited **for the first time by Appellant's counsel**, not the prosecutor. Appellant is correct that the prosecutor initially elicited testimony from Figueroa that Appellant's unnamed cousin gave her the rental car. *See* N.T., 5/22/19, at 58.[6] This cousin, however, was never identified during or before Figueroa's testimony, nor was said cousin's relationship with Appellant explained to the jury. Defense counsel, **not the prosecutor**, identified this unnamed cousin as being Torres, and, more importantly, **elicited testimony from Detective Vance that Torres was a drug dealer**. *See* N.T., 5/23/19, at 197. In light of defense counsel's line of questioning, and attempt to divert culpability from Appellant to Torres, the prosecutor was permitted to "make fair comment on the

_____

[6] It can reasonably be inferred, however, that the prosecutor was **not anticipating** Figueroa's testimony in this regard; *i.e.*, where the prosecutor had stated to the jury during his opening statement that **Appellant**, **not his cousin**, gave Figueroa the rental car. *See* N.T., 5/22/19, at 40. Figueroa's testimony on direct **contradicted** the prosecutor's statement, and introduced an uncharged co-conspirator into the case, which was **disadvantageous** to the prosecution.

admitted evidence and [] provide fair rebuttal to defense arguments." *Commonwealth v. Spotz*, 18 A.3d 244, 288 (Pa. 2011); *see also id.* (stating "[e]ven an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated **in the context in which the comment was made**." (emphasis added; citations omitted)).

Nevertheless, even assuming, *arguendo*, that the trial court erred in admitting the above testimony concerning Torres, such error was harmless where the uncontradicted evidence of Appellant's guilt was overwhelming. It is well established that an "error may be deemed harmless, *inter alia*, where the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." *Commonwealth v. Williams*, 2020 PA Super 246, at \*17 (Pa. Super. 2020) (citation omitted); *see also Commonwealth v. Hairston*, 84 A.3d 657, 671 (Pa. 2014) (the harmless error doctrine "reflects the reality that the accused is entitled to a fair trial, not a perfect trial." (citation omitted)).

Here, Appellant's co-conspirator, Figueroa, testified in detail that it was **Appellant** who coordinated all aspects of the drug transaction (aside from initially giving Torres the rental car), and closely monitored Figueroa throughout her trip to retrieve drugs **for Appellant**. *See generally* N.T.,

5/22/19, at 52-121.[7]  In light of the jury's verdict on the conspiracy charge against Appellant, the jury ostensibly credited this testimony.  *See, e.g., Commonwealth v. Crosley*, 180 A.3d 761, 768 (Pa. Super. 2018) (stating that "even the uncorroborated testimony of a single witness may alone be sufficient to convict a defendant." (citation omitted)).  Accordingly, even if the testimony concerning Torres prejudiced Appellant, any such prejudice was *de minimis* and did not influence the jury's verdict.  *See Williams*, *supra*; *Lively*, *supra*.  Therefore, Appellant's first issue does not entitle him to relief.

In his second issue, Appellant contends the trial court abused its discretion in precluding defense counsel from presenting Torres's testimony in Appellant's case-in-chief.  *See* Appellant's Brief at 21-34.  Though Appellant concedes the defense made this request on the final day of trial, he disputes the trial court's determination that this constituted a discovery violation.  *See id.* at 29-30 (arguing the late request was unavoidable under the circumstances and there was no prejudice to the Commonwealth).  Appellant asserts the court's improper denial of his right to present rebuttal/exculpatory evidence deprived him of a fair trial and his right to present a defense.  *Id.* at 22.

"[D]ecisions involving discovery in criminal cases lie within the discretion of the trial court.  We will not reverse a trial court's order absent an

---

[7] Moreover, Figueroa stated that she had previously done ten nearly identical drug transports **for Appellant**.  *See* N.T., 5/22/19, at 3-5, 81-85.

abuse of that discretion." ***Commonwealth v. Alston***, 233 A.3d 795, 804 (Pa. Super. 2020) (citations and quotation marks omitted). We have explained that

> [i]f a discovery violation occurs, the court may grant a trial continuance or prohibit the introduction of the evidence or may enter any order it deems just under the circumstances. Pa.R.Crim.P. 573(E). The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. Our scope of review is whether the court abused its discretion in not excluding evidence pursuant to Rule 573(E). A [party] seeking relief from a discovery violation must demonstrate prejudice.

***Commonwealth v. Brown***, 200 A.3d 986, 993 (Pa. Super. 2018) (some citations omitted).

In ***Gill v. McGraw Elec. Co.***, 399 A.2d 1095 (Pa. Super. 1979) (*en banc*), our Court set forth the factors a court must consider in determining whether or not a witness should be precluded for failure to comply with discovery rules:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified[;] (2) the ability of that party to cure the prejudice[;] (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of cases in the court[; and] (4) bad faith or willfulness in failing to comply with the court's order.

***Id.*** at 1102.

Here, on the morning of the final day of trial, the following exchange transpired concerning defense counsel's late proffer of Torres:

> [Defense counsel]: Your Honor, [Appellant] came into the courtroom [today] and indicated that he wanted an individual to testify on his behalf. That individual is in Lancaster County Prison.

- 14 -

His name is Genol Torres. The offer of proof would be that [Torres] gave the vehicle to [Figueroa, *i.e.*, for her to pick up the narcotics in New Jersey,] and my client had nothing to do with it.

THE COURT: Commonwealth?

[The prosecutor]: Your Honor, this is a last-minute desire to have someone subpoenaed. I understand the defense has an absolute right to put on their defense in their case-in-chief. I will state that Mr. Torres does have an attorney. …

* * *

[Defense counsel]: Your Honor, Mr. Torres was an individual that came to my attention today by my client[, who] desires [Torres] to testify. I didn't have that information, certainly not back in August 2018 when [the defense was] asked for reciprocal discovery. Mostly that's for expert witnesses and things to that effect. As far as [Appellant's] defense, we don't have to disclose who is going to be testifying on our behalf. But that is a very late request based upon the circumstances of the testimony that has been before Your Honor.

* * *

THE COURT: All right. Very good. So we are going to proceed with the case. If it becomes possible to get Mr. Torres here with counsel, we will do that but if not, given the late and improper disclosure of this witness, we will proceed without him.

N.T., 5/24/19, at 225-27. The trial court subsequently denied defense counsel's request. *See id.* at 270 (ruling, "it is too late of a disclosure after efforts were made by all counsel and the Sheriff's Department to make Mr. Torres available. Given the very late notice, it is highly prejudicial and it is … undue given the potential conflicts from trial counsel for Mr. Torres.").

In its Pa.R.A.P. 1925(a) opinion, the trial court reasoned as follows in support of its ruling:

- 15 -

In addition to the untimeliness of the [defense's] proffered witness [request], Mr. Torres was represented by Attorney Ray Stout, who also represented [] Figueroa's sister, Kiomara [], with the then[-]pending charges [against Kiomara] arising from the same incident. This presented a glaring conflict of interest for [Attorney] Stout to accurately counsel and represent both parties. Furthermore, Mr. Torres was incarcerated. Every effort to coordinate legal counsel and transportation from the prison was made for Mr. Torres to take the stand, but the late disclosure prevented it as a practical matter.

Despite all of that, the relevance of Mr. Torres's testimony to [Appellant's] case-in-chief was, at best, speculative. [Appellant] cannot rely on the speculative nature of what Mr. Torres would or would not have said in hopes of a better outcome. It was [Appellant] that failed to disclose this information. It was [Appellant] that attempted to weaponize the Rules of Criminal Procedure to put the Commonwealth at a disadvantage. The only proper remedy was to preclude testimony from Mr. Torres, and the preclusion did not prejudice [Appellant] in any way.

Trial Court Opinion, 3/12/20, at 9-10 (unnumbered) (citations omitted); **See also Gill**, 399 A.2d at 1102. We agree with the trial court's sound rationale and determination, which is supported by the record and the law. Accordingly, we discern no abuse of the trial court's discretion and Appellant's second issue fails.

In his third issue, Appellant contends that the trial court erred in denying his *pro se* Rule 600 Motion, where his trial purportedly commenced 17 days after the one-year time bar of Pa.R.Crim.P. 600(A)(2)(a), and the trial court improperly attributed periods of delay to the defense. **See** Appellant's Brief at 37-45. We disagree.

This Court reviews a ruling under Rule 600 pursuant to an abuse-of-discretion standard. … Additionally, when considering a Rule 600 claim, this Court must view the record facts in the light

most favorable to the winner of the Rule 600 motion. It is, of course, an appellant's burden to persuade us the trial court erred and relief is due.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of [a] crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth. **So long as there has been no misconduct on the part of the Commonwealth** in an effort to evade the fundamental speedy trial rights of an accused**, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime**. In considering these matters, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Martz*, 232 A.3d 801, 809-10 (Pa. Super. 2020) (emphasis added; citations and ellipses omitted).

Rule 600 provides in relevant part as follows:

(C) Computation of Time

(1) For purposes of paragraph (A) [(general one-year time bar)], periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(C).

To summarize, the courts of this Commonwealth employ three steps in determining whether Rule 600 requires dismissal of charges against a defendant. First, Rule 600(A)[(2)(a)] provides

- 17 -

the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C).[8] We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

***Commonwealth v. Bethea***, 185 A.3d 364, 371 (Pa. Super. 2018) (footnote

added; citations, emphasis, and ellipses omitted).

[I]n assessing any period of delay under Rule 600, it is critical to ascertain the ***cause*** of such delay. Stated in the most general terms, when the Commonwealth causes delay, the Rule 600 clock continues to tick; when the defendant causes delay, the clock stops.

***Commonwealth v. Barbour***, 189 A.3d 944, 958 (Pa. 2018) (emphasis in

original). Finally, periods of judicial delay are excludable from Rule 600.

***Commonwealth v. Mills***, 162 A.3d 323, 325 (Pa. 2017).

The trial court in the instant case concluded Appellant's Rule 600 claim

is "utterly meritless":

The criminal complaint was filed May 3, 2018[,] at the same time as [Appellant's] incarceration. On August 8, 2018, there was one continuance granted[,] with time [attributable to] the Commonwealth. On August 30, 2018, **the case was listed for**

---

[8] We have explained that

"[e]xcludable time" is classified as periods of delay caused by the defendant. Pa.R.Crim.P. 600(C)(2). "Excusable delay" occurs where the delay is caused by circumstances beyond the Commonwealth's control and despite its due diligence. Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth.

***Commonwealth v. Moore***, 214 A.3d 244, 248-49 (Pa. Super. 2019) (citations and quotation marks omitted).

**trial on October 26, 2018**. On September 19, 2018, [defense counsel] filed [the OPT] Motion. On February 11, 2019, a hearing was held to decide the merits of that Motion. Trial commenced on May 22, 2019.

From the filing of the criminal complaint on May 3, 2018 to the commencement of the trial on May 22, 2019, 382 days elapsed, which is 17 days after the mechanical computation of time under Rule 600. **However, 145 days are attributable to the [OPT] Motion** filed on September 1[9], 2018, all time of which is **excluded** from the computation under Rule 600.[FN] With those 145 days excluded from the computation of time, even without any other [d]efense continuances, his trial commenced within 237 days from the filing of the criminal complaint.

> [FN] Court congestion, including the busy holiday season from November to January, attributed to the delay in scheduling the hearing until February 11, 2019. [*See Mills*, *supra* (periods of judicial delay are excludable).]

Moreover, it is worth nothing that [Appellant's] Rule 600 Motion was filed *pro se* even though he was represented at the time he filed it. Any document filed by a defendant represented by an attorney will simply be forwarded to the attorney for review. Pa.R.Crim.P. 576(A)(4). This was done and significantly[,] [defense counsel] did not refile a formal motion on behalf of [Appellant], most likely because the [Rule 600 claim] was entirely without legal or factual merit.

Trial Court Opinion, 3/12/20, at 8-9 (unnumbered) (emphasis added; footnote in original). The record supports the trial court's rationale and determination, and we likewise conclude Appellant's Rule 600 Motion was patently frivolous and properly denied by the trial court. The Commonwealth did not seek to evade Appellant's speedy trial rights in any fashion. *See Martz*, *supra*. Appellant's third issue fails.

In his fourth issue, Appellant argues that the trial court abused its discretion in granting the Commonwealth's Rule 404(b) Motion and permitting

Figueroa to testify to prior, similar incidents where she had transported large quantities of suspected narcotics at Appellant's behest.[9] ***See*** Appellant's Brief at 34-37. Appellant contends this evidence severely prejudiced him and portrayed him as a repeat offender to the jury. ***Id.*** at 36.

Evidence of prior bad acts, while generally not admissible to prove bad character or criminal propensity, can be admissible to show, *inter alia*, a common plan or scheme where the probative value of such evidence outweighs its potential for unfair prejudice.[10] Pa.R.E. 404(b)(2); ***see also Ivy***, 146 A.3d at 251 ("[a]n exception to Rule 404(b) exists that permits the admission of evidence where it became part of the history of the case and formed part of the natural development of facts."). "'Unfair prejudice' means a tendency to suggest a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially."

---

[9] At the beginning of trial, the trial court considered further argument on the Rule 404(b) Motion. ***See*** N.T., 5/22/19, at 3-5. The Commonwealth explained that it had provided defense counsel with a copy of a recorded police interview during discovery; in the recording, Figueroa described the several prior occasions on which she had transported suspected drugs for Appellant. ***Id.*** at 3. Defense counsel stated that he had reviewed this recording, and the Commonwealth's averments in the Rule 404(b) Motion were consistent with the recording. ***Id.***

[10] To determine whether the common plan or scheme exception applies, a trial court must examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive as to become the signature of the same perpetrator. ***Commonwealth v. Ivy***, 146 A.3d 241, 253 (Pa. Super. 2016) (explaining that the circumstances of the crimes need not be identical, but there must be a "logical connection between them.").

*Commonwealth v. Dillon*, 925 A.2d 131, 141 (Pa. 2007) (quoting Pa.R.E. 403, Comment). Additionally, "when weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence." *Dillon*, 925 A.2d at 141.

In the instant case, the trial court opined that it properly admitted the prior bad acts evidence at issue:

> Ms. Figueroa testified that she had performed trips for [Appellant] like the one *sub judice* around ten times. (N.T.[, 5/22/19,] at 81). In these transactions, she always used a rented car provided by Mr. Torres. (*Id.* at 82). [Appellant] would then provide her with an address and instructions throughout the trip. (*Id.*) The transactions were always the same: get the rental car with one bag, receive an address, make an exchange at the address for a different bag, receive a return address, [and finally,] return the rental car with the different bag to that address. (*Id.*) This evidence demonstrates the common scheme and plan of [Appellant], Mr. Torres, and Ms. Figueroa. It also shows why Ms. Figueroa was the subject of Detective Vance's investigation. The jury should be and was presented with this evidence, along with the rest of the Commonwealth's witness testimony and [Appellant's] own testimony. The weight and credibility of this evidence was placed in the hands of the jury. Ms. Figueroa's testimony of the prior transactions showed the natural progression of facts leading up to the current transaction, and its probative value as to the ultimate issue far outweighed any prejudice to [Appellant].

Trial Court Opinion, 3/12/20, at 12-13 (unnumbered) (some capitalization omitted).

Our review discloses that the trial court's above analysis is supported by the record and the law. The evidence of prior bad acts evidence in this case was highly probative to the charged crimes, and the Commonwealth "did not seek to inflame the jury's sensibilities with references to matters other than

the legal proposition relevant to the case." ***Antidormi***, 84 A.3d 736, 751 (Pa. Super. 2014). Additionally, because defense counsel, well prior to trial, had reviewed Figueroa's police interview describing her prior drug transports for Appellant, we are unpersuaded by Appellant's claim of unfair surprise. Finally, the trial court issued a cautionary instruction concerning the limited purpose for which the jury could consider Appellant's prior bad acts. ***See*** N.T., 5/24/19, at 325-26. This ameliorated any prejudice this evidence may have caused Appellant. ***See Dillon***, 925 A.2d at 141; ***see also Commonwealth v. Speight***, 854 A.2d 450, 458 (Pa. 2004) (a jury is presumed to follow a trial court's instructions). Appellant's fourth issue is meritless.

In his fifth issue, Appellant contends that the trial court erred in admitting inappropriate expert testimony from Detectives Weber and Vance, which deprived Appellant of a fair trial. ***See*** Appellant's Brief at 45-51. We disagree.

The admissibility of expert evidence is within the sound discretion of the trial court, and we will not reverse absent a manifest abuse of discretion. ***Commonwealth v. Leap***, 202 A.3d 386, 390 (Pa. Super. 2019). Expert testimony is admissible when it "involves explanations and inferences not within the range of ordinary training[,] knowledge, intelligence and experience." ***Commonwealth v. Walker***, 92 A.3d 766, 788 (Pa. 2014) (citation omitted).

Preliminarily, to the extent Appellant challenges the admission of Detective Vance's testimony that Torres and Appellant were drug associates, *see* Appellant's Brief at 49-51, we need not address this claim, as we already rejected it in connection with Appellant's first issue, *supra*.

Regarding Detective Weber's expert testimony, Appellant contends that the trial court improperly overruled defense counsel's objection and permitted the Detective to opine that Appellant constructively possessed the narcotics seized from Figueroa's vehicle with the intent to deliver. *Id.* at 46.

Detective Weber was qualified as an expert in the field of heroin distribution in Lancaster County, without objection by defense counsel. *See* N.T., 5/23/19, at 234.[11] On direct examination, Detective Weber provided the jury a definition for constructive possession. *Id.* at 235 (defining the term as "not having [an object] in [the accused's] physical control or not having it in their possession."). Based on his training and unchallenged drug experience, Detective Weber opined that Appellant constructively possessed the narcotics in question. *Id.* at 244.

Appellant "concedes that expert testimony is admissible concerning whether the facts surrounding the possession of controlled substance are consistent with an intent to deliver[.]" Appellant's Brief at 46 (citing

---

[11] Although Detective Weber was not involved in the investigation into the instant crimes, he was present in the courtroom for Appellant's entire trial and had reviewed all discovery materials. *Id.* at 234-35.

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1236 (Pa. 2007)). However, he claims that expert testimony regarding constructive possession is inadmissible. *Id.* In this regard, Appellant primarily relies upon a decision of the New Jersey Supreme Court, *State v. Reeds*, 962 A.2d 1087 (N.J. 2009). *See* Appellant's Brief at 48-49.

It is black-letter law that decisions of sister states are not binding precedent on this Court. *See Commonwealth v. Arthur*, 62 A.3d 424, 429, n.9 (Pa. Super. 2013). Additionally, whether Appellant possessed the narcotics was a relevant fact at issue to the charges against him (*i.e.*, PWID), and witnesses may testify to ultimate issues before the jury. *See* Pa.R.E. 704, *supra*.

Nevertheless, even if, *arguendo*, the trial court erred in admitting Detective Weber's testimony, such error was harmless. *See Williams*, *supra*. The jury **acquitted** Appellant of PWID; it convicted him of criminal conspiracy, which does not include a possessory element like PWID. Thus, Appellant did not suffer any prejudice from Detective Weber's testimony concerning constructive possession, and any error was entirely harmless. Appellant's fifth issue is meritless.

In his sixth and final issue, Appellant contends that the sentencing court erred in assigning an offense gravity score (OGS) of 11 to Appellant's conspiracy conviction. *See* Appellant's Brief at 52-54.

Appellant challenges the discretionary aspects of his sentence, from which there is no absolute right to appeal. *See Commonwealth v. Hill*, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where, as here, the appellant has preserved the sentencing challenge for our review, by raising it in a timely post-sentence motion, he or she must (1) include in their brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence, pursuant to Pa.R.A.P. 2119(f); and (2) show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code. *Hill*, 66 A.3d at 363-64.

Here, Appellant's brief contains a Rule 2119(f) Statement. Additionally, his claim presents a substantial question for our review. *See Commonwealth v. Sunealitis*, 153 A.3d 414, 421 (Pa. Super. 2016) (a claim that sentencing court used an incorrect OGS presents a substantial question); *Commonwealth v. Archer*, 722 A.2d 203, 210-11 (Pa. Super. 1998) (*en banc*) (same).

Accordingly, we will review the merits of Appellant's claim, mindful of our standard of review: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." *Commonwealth v. Barnes*, 167 A.3d 110, 122 n.9 (Pa. Super. 2017) (*en banc*) (citation omitted).

Appellant contends the sentencing court improperly utilized an OGS of 11 in imposing sentence on the conspiracy conviction. *See* Appellant's Brief

at 52-54. Appellant points out that this OGS was based upon the weight of the narcotics in question (120 grams); however, the jury never made a finding as to the actual weight (*i.e.*, since the portion of the verdict slip regarding the conspiracy charge did not require the jury to make a finding on the weight of the narcotics involved). *Id.* at 53-54 (citing *Alleyne v. United States*, 570 U.S. 99, 108 (2013) (holding facts that increase mandatory minimum sentences must be submitted to the jury and found beyond a reasonable doubt)).

This issue lacks merit. Appellant fails to acknowledge that defense counsel stipulated that the narcotics in question weighed 120 grams. It is settled that a stipulation is binding on the parties and the court. *See Commonwealth v. Mitchell*, 902 A.2d 430, 460 (Pa. 2006); *see also Commonwealth v. Belak*, 825 A.2d 1252, 1256 n.10 (Pa. 2003) (stating a stipulation "is a declaration that the fact agreed upon is proven, and it must be enforced according to its terms."). Finally, contrary to Appellant's claim, *Alleyne* is unavailing and inapplicable. *Cf. Commonwealth v. Rivera*, 154 A.3d 370, 378-79 (Pa. Super. 2017) (*en banc*) (where, unlike here, the court sentenced defendant under a mandatory minimum sentencing provision based on the weight of narcotics seized, holding that a stipulation as to weight cannot serve to circumvent *Alleyne*).

Judgment of sentence affirmed.

Judge Shogan joins the memorandum.

Judge Stabile concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>01/04/2021</u>